Ryan W. Koppelman (SBN 290704)
Timothy R. Watson (SBN 293774)
**ALSTON & BIRD LLP**
1950 University Avenue, 5th Floor
East Palo Alto, CA 94303
Telephone:  (650) 838-2000
Facsimile:  (650) 838-2001
ryan.koppelman@alston.com
tim.watson@alston.com

Evan W. Woolley (SBN 286385)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone:  (213) 576-1000
Facsimile:  (213) 576-1100
evan.woolley@alston.com

Michael J. Newton (SBN 156225)
**ALSTON & BIRD LLP**
2828 North Harwood Street, 18th Floor
Dallas, Texas 75201
Telephone:  (214) 922-3400
Facsimile:  (214) 922-3899
mike.newton@alston.com

*Attorneys for Plaintiff*
*Universal Electronics Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIVERSAL ELECTRONICS INC., a Delaware Company,<br><br>       Plaintiff,<br><br>   v.<br><br>ROKU, INC., a Delaware Company,<br><br>       Defendant. | **Case No. 8:18-cv-01580**<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Universal Electronics Inc. ("UEI") hereby brings its Complaint for patent infringement against Defendant Roku, Inc. ("Roku") and alleges as follows:

## NATURE OF CASE

1. UEI is a 30-year old public company based in Santa Ana, California. It is the technology leader in home entertainment and home automation control, winning numerous awards related to universal entertainment control processes and technology. Throughout its 30-year history, UEI has consistently prioritized investments in research and development and technology acquisitions that have allowed it to pioneer, patent, and perfect key technologies in the area of entertainment interaction and control. As a result, UEI holds over 350 U.S. patents related to TV, home entertainment, and home control technologies and has many additional patent applications pending in the United States and jurisdictions throughout the world. Many of the world's leading consumer electronics OEM brands and subscription broadcasting operators purchase or license UEI's control technologies.

2. Roku is a relative newcomer to home entertainment control. Despite a mutually successful previous business relationship with UEI, Roku decided to forgo licensing key UEI technologies that are prevalent in a number of Roku's home entertainment products.  After failing to reach an acceptable business solution, UEI brings this suit to secure appropriate relief and ensure adequate compensation for Roku's use of UEI technology.

3. In this Complaint, UEI asserts nine counts of patent infringement against Roku. The nine patents are in four patent families and two general technology categories: remote control set-up and touchscreen remotes.

## PARTIES

4. Plaintiff UEI is a Delaware corporation that has a principal place of business located at 201 E. Sandpointe Ave., Santa Ana, CA 92707.

5. Defendant Roku is a Delaware corporation with a principal place of business located at 150 Winchester Circle, Los Gatos, CA 95032. It has offices in the judicial

district at 2450 Colorado Ave., Santa Monica, CA 90404.

6.      Roku manufactures and sells streaming players and components therefor, enabling users to stream free or paid programming services. Roku offers a Roku App for download to a smartphone or tablet to access streaming content. The Roku App works with the devices at issue in this action, like the Roku TV, Roku Ultra, Roku Express, Roku Streaming Stick, and Roku Streaming Stick + and others.

## PATENTS IN-SUIT

7.      UEI owns and has standing to sue for infringement of U.S. Patent No. 7,589,642 (the "642 Patent"), entitled "Relaying Key Code Signals Through a Remote Control Device," which was duly and lawfully issued on September 15, 2009.  A true and correct copy of the 642 Patent is attached to this Complaint as Exhibit A.

8.      UEI owns and has standing to sue for infringement of U.S. Patent No. 8,004,389 (the "389 Patent"), entitled "Relaying Key Code Signals Through a Remote Control Device," which was duly and lawfully issued on August 23, 2011.  A true and correct copy of the 389 Patent is attached to this Complaint as Exhibit B.

9.      UEI owns and has standing to sue for infringement of U.S. Patent No. 9,911,325 (the "325 Patent"), entitled "Relaying Key Code Signals Through a Remote Control Device," which was duly and lawfully issued on March 6, 2018.  A true and correct copy of the 325 Patent is attached to this Complaint as Exhibit C.

10.      UEI owns and has standing to sue for infringement of U.S. Patent No. 9,716,853 (the "853 Patent"), entitled "System and Method for Optimized Appliance Control," which was duly and lawfully issued on July 25, 2017.  A true and correct copy of the 853 Patent is attached to this Complaint as Exhibit D.

11.      UEI owns and has standing to sue for infringement of U.S. Patent No. 7,782,309 (the "309 Patent"), entitled "Controlling Device with Dual-Mode, Touch-Sensitive Display," which was duly and lawfully issued on August 24, 2010.  A true and correct copy of the 309 Patent is attached to this Complaint as Exhibit E.

12.      UEI owns and has standing to sue for infringement of U.S. Patent No.

7,821,504 (the "504 Patent"), entitled "Controlling Device with Dual-Mode, Touch-Sensitive Display," which was duly and lawfully issued on October 26, 2010. A true and correct copy of the 504 Patent is attached to this Complaint as Exhibit F.

13.     UEI owns and has standing to sue for infringement of U.S. Patent No. 7,821,505 (the "505 Patent"), entitled "Controlling Device with Dual-Mode, Touch-Sensitive Display," which was duly and lawfully issued on October 26, 2010. A true and correct copy of the 505 Patent is attached to this Complaint as Exhibit G.

14.     UEI owns and has standing to sue for infringement of U.S. Patent No. 7,895,532 (the "532 Patent"), entitled "User Interface for a Remote Control Application," which was duly and lawfully issued on February 22, 2011. A true and correct copy of the 532 Patent is attached to this Complaint as Exhibit H.

15.     UEI owns and has standing to sue for infringement of U.S. Patent No. 8,015,446 (the "446 Patent"), entitled "User Interface for a Remote Control Application," which was duly and lawfully issued on September 6, 2011. A true and correct copy of the 446 Patent is attached to this Complaint as Exhibit I.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

17.     This Court has personal jurisdiction over Roku pursuant to the laws of the State of California, including California's Long Arm Statute, California Code of Civil Procedure § 410.10. Roku's principal place of business is in the state of California, and, as a result, Roku is subject to general jurisdiction here. Roku has committed acts of infringement in California infringing UEI's asserted patents in California, and, as a result, Roku is subject to specific jurisdiction here. In particular, Roku sells and offers to sell hardware and software relating to remote control devices that infringe UEI's patents in California, and specifically in this judicial district. Roku does business in this judicial district relating to Roku's accused products, and has an office located in this district at 2450 Colorado Ave., Santa Monica, CA 90404. Roku is subject to personal jurisdiction

because it has a regular and established place in this district and it sells, distributes, and licenses its products in this District, such that it should reasonably and fairly anticipate being brought into this Court.

18.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(d) and 1400(b). Roku has committed acts of infringement in this judicial district and has a regular and established place of business in this judicial district at 2450 Colorado Ave., Santa Monica, CA 90404. It occupies commercial office space at that address and employs numerous employees at this address, including its General Counsel.

## FACTUAL BACKGROUND

19.     UEI is a pioneer in the TV industry, particularly in the realm of remote controls.  UEI is the owner of hundreds of patents in this technology area ranging from remote controls to software to systems of networked devices. UEI was the first to create the pre-programmed universal remote control, which allows one remote control to command numerous devices.  Back when infrared (IR) technology was the dominant method of controlling televisions and accessories, UEI invested significant time and resources to develop a device control database that correlated certain IR control codes with certain brands and devices.  As other forms of communication and control were implemented with TVs and accessories, such as HDMI and WiFi, UEI continued to innovate and improve how remote controls could interface with a range of devices.

20.     One of UEI's flagship technologies is QuickSet®, a product family dedicated to simplifying and automating the configuration and control of remote controls and home entertainment devices.  QuickSet® is a widely deployed technology already in over 250 million devices around the world including set-top boxes, televisions, game consoles, smartphones, and tablets to enable effortless configuration and control of nearly any connected home entertainment device.  The 642, 389, 325, and 853 Patents relate to features incorporated into versions of UEI's QuickSet® product family. Roku has incorporated these patented technologies into its products and services without authorization.

21.    UEI was also a pioneer in using touch screens and graphical user interfaces ("GUIs") in remote control applications.  Well before smartphones made touchscreen technology ubiquitous, UEI patented devices and methods for using touchscreens and GUIs for remote control applications.  The 309, 504, 505, 446, and 532 Patents relate to UEI's touchscreen GUI technology. Roku also has incorporated these additional patented technologies into its products and services without authorization.

**COUNT ONE**

**INFRINGEMENT OF U.S. PATENT 7,582,642**

22.    UEI incorporates the previous paragraphs of this Complaint as if fully set forth herein.

23.    UEI is the owner of all rights, title, and interest in the 642 Patent, including the right to bring this suit for injunctive relief and damages.

24.    The 642 Patent generally relates to methods and devices allowing remote control devices to control one or more electronic consumer devices.  At the time of the 642 Patent, existing consumer electronic devices would often be packaged with their own remote control device which were dedicated to operating only the particular device with which they were packaged, requiring owners of multiple devices to own multiple remote control devices.  Each such remote control device would contain data relating only to the functions of its associated consumer electronic device.  Memory limitations in these remote control devices would limit the amount of consumer electronic devices that a single remote control could control.  The invention of the 642 Patent overcame these limitations in several ways including with a method and system for relaying a key code through a remote control device to an electronic consumer device allowing the electronic consumer device to be controlled without storing the associated code set on the remote control device.

25.    The 642 Patent is valid and enforceable.  The claims of the 642 Patent are directed to an inventive application in the field of remote control of consumer electronic devices.  The combination of claim elements was not well-understood, routine, or

6

conventional to those in the field at the time of invention. In particular, it was not well-understood, routine or conventional at the time of invention for a system to receive a keystroke indicator signal from a remote control device based on a user selecting a key on a remote control, generate a key code within a key code generator device using the keystroke indicator signal, modulate the key code onto a carrier signal, thereby generating a key code signal, and transmitting said key code signal from said key code generator device to an electronic consumer device. This was previously recognized by the Patent Trademark and Appeals Board (PTAB) in its denial of an institution of an IPR proceeding related to the 642 Patent. In particular, the PTAB determined that none of the 20+ cited combinations of references included at least the step of modulating the key code onto a carrier signal of claim 2.

26.    UEI has provided notice to the public of the 642 Patent via marking the patent number on UEI's NevoSmart App on its "About" screen.

27.    Roku has infringed and continues to infringe literally and/or through the doctrine of equivalents, one or more claims of the 642 Patent, including but not limited to claim 2, by using, making, offering to sell, and/or selling without authority in the United States certain universal control devices, including but not limited to the "Roku Ultra," the "Roku Streaming Stick," the "Roku Streaming Stick+," the "Roku Express," the "Roku Express+," the "Roku Premiere," the "Roku Premiere+," the "Roku 4," the "Roku 3," the "Roku 2," the "Roku TV," the "Roku Enhanced Remote," and any other Roku product that provides for the remote control of an external device such as a TV, audiovisual receiver, sound bar or "Roku TV Wireless Speakers" via a Roku remote through IR, RF and/or HDMI as directed by a Roku box or TV  (the "642 Patent Accused Products").

28.    For purposes of example only, and without limitation, the 642 Patent Accused Products perform every element of claim 2 of the 642 Patent when used as intended by Roku.  Roku also has infringed and continues infringes at least one other claim of the 642 Patent.

29.    In particular, the method of claim 2 involves "receiving a keystroke

indicator signal from a remote control device, wherein the keystroke indicator signal indicates a key on said remote control device that a user has selected." The 642 Patent Accused Products receive a keystroke indicator signal from Roku's remote control, wherein the keystroke indicator signal indicates a key on Roku's remote that a user has pressed.

30.   The method of claim 2 further involves "generating a key code within a key code generator device using the keystroke indictor signal." The 642 Patent Accused Products generate a key code, during at least the set-up process, in response to a keystroke indicator signal to enable a Roku remote to control other devices, and also based on certain Roku menu settings which provide for the control of other devices.

31.   The method of claim 2 further involves "modulating said key code onto a carrier signal, thereby generating a key code signal." The 642 Patent Accused Products generate key code signals onto a carrier signal, such as Bluetooth, IR, Wi-Fi and Wi-Fi Direct to communicate with a remote control and over HDMI cables or RF to communicate with a TV and/or other consumer electronic devices like an audiovisual receiver, sound bar or "Roku TV Wireless Speakers."

32.   The method of claim 2 further involves "transmitting said key code signal from said key code generator device to an electronic consumer device." The 642 Patent Accused Products transmit such key code signals to a consumer electronic device using various combinations of RF, IR and HDMI CEC signaling across the various 642 Patent Accused Products.

33.   Roku has infringed and continues to infringe claims of the 642 Patent within the meaning of 35 U.S.C. § 271(a) through the foregoing activities, including at least making, using, selling, offering for sale, and/or importing the 642 Patent Accused Products.

34.   Roku has performed each and every element of claim 2 of the 642 Patent during at least its own product development and testing of the 642 Patent Accused Products.

35.     Roku has indirectly infringed and continues to indirectly infringe at least claim 2 of the 642 Patent under § 271(b) by knowingly and actively inducing infringement of those claims by its customers and end users of its products.  The direct infringers that Roku has induced to infringe include, without limitation, Roku's customers, users, and retailers that offer for sale, sell, and use the 642 Patent Accused Devices.

36.     Roku is on notice of the 642 Patent at least as of the filing of this complaint.  In addition, Roku has had actual or constructive knowledge of the 642 Patent and its infringement prior to the filing of this Complaint.  As stated above, UEI marked the 642 Patent via its NevoSmart App on its "About" screen.  Further, at least as of September 2017, UEI informed Roku that it had over 30 issued and pending patents covering its control solutions.  It is believed that Roku investigated UEI's patents as a result and gained actual knowledge of the 642 Patent. Roku's own patents also have cited documents referring to UEI's patents over 290 times, which made Roku aware of UEI's patents. Furthermore, it is believed Roku copied various aspects of UEI's patented technology, and Roku's copying shows Roku knew or should have known of the 642 Patent and intended to induce infringement. As a result, Roku at least engaged in willful blindness by taking deliberate actions to avoid confirming a high probability of infringement of the 642 Patent. As such, Roku either knew or should have known about the existence of the 642 Patent and that creating features in its devices to practice that patent would induce infringement. Roku has induced and continue to induce end users of the 642 Patent Accused Products to infringe at least claim 2 of the 642 Patent within the meaning of 35 U.S.C. § 271(b).

37.     Roku's acts of inducement include making, using, selling, and offering to sell the 642 Patent Accused Products, as well as Roku's creation and dissemination of promotional materials, marketing materials, and instruction guides that teach and encourage end users to use the 642 Patent Accused Products in an infringing manner. For example, the 642 Patent Accused Products provide step-by-step instruction on how an

end user should use these products in a manner that directly infringes the 642 Patent, and Roku also provides further instruction in the "Setup and Troubleshooting" section of its website. Roku, has a webpage, https://support.roku.com/en-gb/article/115013019828-how-to-set-up-your-roku-enhanced-remote-to-control-your-tv, dedicated to instructing users how to set up Roku Enhanced Remotes via wireless and infrared (IR) technologies to seamlessly control Roku streaming players and aspects of users' TVs. Examples include, without limitation, Roku's instructions on how to connect Roku devices to control other devices through HDMI and IR.

38.    Additionally, Roku has contributed to the infringement of claims of the 642 Patent within the meaning of 35 U.S.C. § 271(c). Specifically, Roku has contributed to the end users infringement of the 642 Patent by, among other things, making, selling, aiding, assisting, authorizing, advertising, marketing, promoting, providing for, and/or encouraging the offer for sale, sale, and use of the 642 Patent Accused Products, which Roku knew contain the software and features discussed above that are especially made or adapted by Roku for infringing uses of claims of the 642 Patent.  The software and features discussed above are not staple articles of commerce suitable for substantial non-infringing use.  The direct infringers for Roku's contributory infringement include, without limitation, its customers, users, and retailers that offer for sale, sell, and use the 642 Patent Accused Products.

39.    Roku's direct and indirect infringement of the 642 Patent has injured UEI, and UEI is entitled to recover damages adequate to compensate it for such infringement.

40.    Roku's infringement of the 642 Patent has been willful, wanton, malicious, and/or deliberate and constitutes egregious behavior justifying an award of enhanced damages.  More specifically, Roku knew or should have known about the 642 Patent and its infringement of that patent, as discussed above, but continued to engage in the using, making, offering to sell, and/or selling of the 642 Patent Accused Products despite an objectively high likelihood that this conduct would infringe the 642 Patent.

41.    Roku's infringing activities will continue to injure UEI unless and until this

Court enters an injunction prohibiting further infringement and, specifically, enjoining further direct and indirect infringement of the 642 Patent.  If Roku's conduct is not stopped, UEI will continue to suffer competitive harm, irreparable injury, and significant damages.  Because UEI has no adequate remedy at law, UEI seeks, in addition to damages, preliminary and permanent injunctive relief.  UEI competes to supply remote control technology to companies like Roku and will continue suffering irreparable harm absent injunctive relief.

**COUNT TWO**

**INFRINGEMENT OF U.S. PATENT 8,004,389**

42.     UEI incorporates the previous paragraphs of this Complaint as if fully set forth herein.

43.     UEI is the owner of all rights, title, and interest in the 389 Patent, including the right to bring this suit for injunctive relief and damages.

44.     The 389 Patent was filed as a continuation of the patent that issued as the 642 Patent, and its claims are inventive for many of the same reasons as described with respect to the 642 Patent.

45.     The 389 Patent is valid and enforceable.  The claims of the 389 Patent are directed to an inventive application in the field of remote control of consumer electronic devices.  The combination of claim elements was not well-understood, routine, or conventional to those in the field at the time of invention. The 389 Patent's claims share some similarities with the inventions claimed in the 642 Patent, but they include different or additional elements, each of which make the claims novel for the same or additional reasons as described above.  For example, claim 2 of the 389 Patent includes the step of "identifying said codeset using input from a user of said remote control device, wherein said codeset is identified when said user stops pressing a key on said remote control device." For this reason as well, the combination of claim elements was not well-understood, routine, or conventional to those in the field at the time of invention.

46.     Roku has infringed and continues to infringe literally and/or through the

doctrine of equivalents, one or more claims of the 389 Patent, including but not limited to claim 2, by using, making, offering to sell, and/or selling without authority in the United States certain universal control devices, including but not limited to the "Roku Ultra", the "Roku Streaming Stick", the "Roku Streaming Stick+," the "Roku Premiere," the "Roku Premiere+," the "Roku 4," the "Roku TV," the "Roku Enhanced Remote," and any other Roku product that provides for the onscreen set-up of a remote control to control an external device, such as a TV, audiovisual receiver, sound bar or "Roku TV Wireless Speakers", where the Roku onscreen set-up process includes the step of the user indicating whether the sound on the target device was muted and stops pressing a key when it is muted (the "389 Patent Accused Products").

47.     For purposes of example only, and without limitation, the 389 Patent Accused Products perform every element of claim 2 of the 389 Patent when used as intended by Roku. Roku also has infringed and continues infringes at least one other claim of the 389 Patent.

48.     The method of claim 2 involves "receiving a keystroke indicator signal from a remote control device, wherein the keystroke indicator signal indicates a key on said remote control device that a user has selected." The 389 Patent Accused Products receive a keystroke indicator signal from Roku's remote control, wherein the keystroke indicator signal indicates a key on Roku's remote that a user has pressed.

49.     The method of claim 2 further involves "generating a key code within a key code generator device using the keystroke indicator signal, wherein said key code is part of a codeset that controls an electronic consumer device." The 389 Patent Accused Products generate a key code during the set-up process, in response to keystroke indicator signal. This key code is part of a codeset that controls an electronic consumer device, such as the set of IR or CEC codes for control of a TV.

50.     The method of claim 2 further involves "modulating said key code onto a carrier signal, thereby generating a key code signal." The 389 Patent Accused Products can generate key code signals onto a carrier signal, such as Bluetooth, Wi-Fi Direct, or IR

to communicate with a remote.

51.    The method of claim 2 further involves "transmitting said key code signal from said key code generator device."  The 389 Patent Accused Products can transmit such key code signals to the remote control device, using Bluetooth, Wi-Fi Direct, or IR transmissions depending on the model of the device, or to a consumer electronic device using HDMI CEC.

52.    The method of claim 2 further involves "identifying said codeset using input from a user of said remote control device, wherein said codeset is identified when said user stops pressing a key on said remote control device."  The 389 Patent Accused Products can identify a codeset for a consumer electronic device via user input on the Roku remote in response to screen stating "Music is currently playing.  Do you hear it?" and "Did the music stop playing?"  When the user stops pressing a key, the codeset is identified.

53.    Roku has infringed and continues to infringe claims of the 389 Patent within the meaning of 35 U.S.C. § 271(a) through the foregoing activities, including at least making, using, selling, offering for sale, and/or importing the 389 Patent Accused Products.

54.    Roku has performed each and every element of claim 2 of the 389 Patent during at least its own product development and testing of the 389 Patent Accused Products.

55.    Roku has indirectly infringed and continue to indirectly infringe at least claims of the 389 Patent under § 271(b) by knowingly and actively inducing infringement of those claims by its customers and end users of its products. The direct infringers that Roku has induced to infringe include, without limitation, Roku's customers, users, and retailers that offer for sale, sell, and use the 389 Patent Accused Devices.

56.    Roku is on notice of the 389 Patent at least as of the filing of this complaint. In addition, Roku has had actual or constructive knowledge of the 389 Patent and its infringement prior to the filing of this Complaint.  At least as of September 2017, UEI

informed Roku that it had over 30 issued and pending patents covering its control solutions.  It is believed that Roku investigated UEI's patents as a result and gained actual knowledge of the 389 Patent. Roku's own patents also have cited documents referring to UEI's patents over 290 times, which made Roku aware of UEI's patents. As a result, Roku at least engaged in willful blindness by taking deliberate actions to avoid confirming a high probability of infringement of the 389 Patent. Furthermore, it is believed Roku copied various aspects of UEI's patented technology, and Roku's copying shows Roku knew or should have known of the 389 Patent and intended to induce infringement. As such, Roku either knew or should have known about the existence of the 389 Patent and that creating features in its devices to practice that patent would induce infringement.  Roku has induced and continue to induce end users of the 389 Patent Accused Products to infringe at least claim 2 of the 389 Patent within the meaning of 35 U.S.C. § 271(b).

57.     Roku's acts of inducement include making, using, selling, and offering to sell the 389 Patent Accused Products, as well as Roku's creation and dissemination of promotional materials, marketing materials, and instruction guides that teach and encourage end users to use the 389 Patent Accused Products in an infringing manner. For example, the 389 Patent Accused Products provide step-by-step instruction on how an end user should use these products in a manner that directly infringes the 389 Patent, and Roku also provides further instruction in the "Setup and Troubleshooting" section of its website. Roku, has a webpage, https://support.roku.com/en-gb/article/115013019828-how-to-set-up-your-roku-enhanced-remote-to-control-your-tv, dedicated to instructing users how to set up Roku Enhanced Remotes via wireless and infrared (IR) technologies to seamlessly control Roku streaming players and aspects of users' TV. Examples include, without limitation, Roku's instructions on how to connect Roku devices to control other devices through HDMI CEC or IR, including the "Did the music stop playing?" screen referenced above.

58.     Additionally, Roku has contributed to the infringement of claims of the 389

Patent within the meaning of 35 U.S.C. § 271(c). Specifically, Roku has contributed to the end users infringement of the 389 Patent by, among other things, making, selling, aiding, assisting, authorizing, advertising, marketing, promoting, providing for, and/or encouraging the offer for sale, sale, and use of the 389 Patent Accused Products, which Roku knew contains the software and features discussed above that are especially made or adapted by Roku for infringing uses of claims of the 389 Patent.  The software and features discussed above are not staple articles of commerce suitable for substantial non-infringing use.  The direct infringers for Roku's contributory infringement include, without limitation, its customers, users, and retailers that offer for sale, sell, and use the 389 Patent Accused Products.

59.    Roku's direct and indirect infringement of the 389 Patent has injured UEI, and UEI is entitled to recover damages adequate to compensate it for such infringement.

60.    Roku's infringement of the 389 Patent has been willful, wanton, malicious, and/or deliberate and constitutes egregious behavior justifying an award of enhanced damages.  More specifically, Roku knew or should have known about the 389 Patent and its infringement of that patent, as discussed above, but continued to engage in the using, making, offering to sell, and/or selling of the 389 Patent Accused Products despite an objectively high likelihood that this conduct would infringe the 389 Patent.

61.    Roku's infringing activities will continue to injure UEI unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further direct and indirect infringement of the 389 Patent.  If Roku's conduct is not stopped, UEI will continue to suffer competitive harm, irreparable injury, and significant damages.  Because UEI has no adequate remedy at law, UEI seeks, in addition to damages, preliminary and permanent injunctive relief.  UEI competes to supply remote control technology to companies like Roku and will continue suffering irreparable harm absent injunctive relief.

## COUNT THREE

## INFRINGEMENT OF U.S. PATENT 9,911,325

62.     UEI incorporates the previous paragraphs of this Complaint as if fully set forth herein.

63.     UEI is the owner of all rights, title, and interest in the 325 Patent, including the right to bring this suit for injunctive relief and damages.

64.     The 325 Patent arose from the same family as the 642 and 389 Patents, and its claims are inventive for many of the same reasons as described with respect to the 642 Patent.

65.     The 325 Patent is valid and enforceable.  The claims of the 325 Patent are directed to an inventive application in the field of remote control of consumer electronic devices.  The combination of claim elements was not well-understood, routine, or conventional to those in the field at the time of invention. The 325 Patent claims share some similarities with the inventions claimed in the 642 Patent, but they also include different or additional elements, each of which make the claims novel for the same or additional reasons as described above.  For example, claim 1 of the 325 Patent includes is an apparatus claim and includes additional elements related to such physical devices, as well as additional limitations where the "codeset further comprises time information that describes how a digital one and/or digital zero within the selected one of the plurality of key code data is to be represented in the key code signal to be transmitted to the second device." For this reason as well, the combination of claim elements was not well-understood, routine, or conventional to those in the field at the time of invention.

66.     Roku has infringed and continues to infringe literally and/or through the doctrine of equivalents, one or more claims of the 325 Patent, including but not limited to claim 1, by using, making, offering to sell, and/or selling without authority in the United States certain universal control devices, including but not limited to the "Roku Ultra", the "Roku Streaming Stick", the "Roku Streaming Stick+," the "Roku Express," the "Roku Express+," the "Roku Premiere," the "Roku Premiere+," the "Roku 4," the "Roku 3," the

"Roku 2," the "Roku TV," and any other Roku product that provides for the remote control of an external device such as a TV and/or other consumer electronic devices like an audiovisual receiver, sound bar or "Roku TV Wireless Speakers" via a Roku remote via IR, HDMI or RF (the "325 Patent Accused Products").

67.    For purposes of example only, and without limitation, the 325 Patent Accused Products perform every element of claim 1 of the 325 Patent when used as intended by Roku. Roku also has infringed and continues infringes at least one other claim of the 325 Patent.

68.    Claim 1 involves "A first device for transmitting a command to control a functional operation of a second device." The 325 Patent Accused Products transmit a command to control a functional operation of a second device, such as a TV and/or other consumer electronic devices like an audiovisual receiver, sound bar or "Roku TV Wireless Speakers."

69.    Claim 1 further involves the first device comprising "a receiver." The 325 Patent Accused Products contain a receiver that is used to communicate with the remote control and receive signals via Bluetooth, Wi-Fi Direct, or IR, depending on the particular device.

70.    Claim 1 further involves the first device comprising "a transmitter." The 325 Patent Accused Products contain a transmitter in the form of at least the hardware used to send signals via RF or HDMI CEC.

71.    Claim 1 further involves the first device comprising "a processing device coupled to the receiver and the transmitter." Each of the 325 Patent Accused Products contain a processor coupled to the device's receiver and transmitter.

72.    Claim 1 further involves the first device comprising "a memory storing instructions executable by the processing device." Each of the 325 Accused Products contain memory storing instructions in the form of software that is executable by the processing device.

73.    Claim 1 further involves the instructions causing the processing device to

"generate a key code using a keystroke indicator received from a third device in communication with first device via use of the receiver, the keystroke indicator having data that indicates an input element of the third device that has been activated."  The 325 Patent Accused Products generate a key code in response to a keystroke indicator signal pressed on the Roku's remote control.  The products receive the keystroke indicator from the remote control via use of their receiver.  The keystroke indicator signal has data indicating that an input element of the remote control has been activated.

74.    Claim 1 further involves the instructions causing the processing device to "format the key code for transmission to the second device."  The 325 Patent Accused Products format a key code for transmission to the second device, such as a TV or audiovisual receiver, via HDMI CEC.

75.    Claim 1 further involves the instructions causing the processor to "transmit the formatted key code to the second device in a key code signal via use of the transmitter."  The 325 Patent Accused Products transmit a CEC-formatted key code to a second device, such as a TV or audiovisual receiver, via HDMI link.

76.    Claim 1 further involves "wherein the generated key code comprises a one of a plurality of key code data stored in a codeset."  The key codes generated by the 325 Patent Accused Products comprise a one of a plurality of data that is stored in a codeset of CEC data.

77.    Claim 1 further involves "wherein the one of the plurality of key code data is selected from the codeset as a function of the keystroke indicator received from the third device."  The one of the plurality of key code data used by the 325 Patent Accused Products is selected from the codeset as a function of the keystroke indicator received from the remote control.

78.    Claim 1 further involves "wherein each of the plurality of key code data stored in the codeset comprises a series of digital ones and/or digital zeros."  The CEC data transmitted by the 325 Patent Accused Products is made up of a series of digital ones and/or digital zeros.

18

79.     Claim 1 further involves "wherein the codeset further comprises time information that describes how a digital one and/or a digital zero within the selected one of the plurality of key code data is to be represented in the key code signal to be transmitted to the second device."  The CEC data transmitted by the 325 Patent Accused Products includes time information that describes how a digital one and/or a digital zero is to be represented in a signal transmitted to a second device, such as a TV or audiovisual receiver.

80.     Roku has infringed and continues to infringe claims of the 325 Patent within the meaning of 35 U.S.C. § 271(a) through the foregoing activities, including at least making, using, selling, offering for sale, and/or importing the 325 Patent Accused Products.

81.     Roku has indirectly infringed and continues to indirectly infringe claims of the 325 Patent under § 271(b) by knowingly and actively inducing infringement of those claims by its customers and end users of its products.  The direct infringers that Roku has induced to infringe include, without limitation, Roku's customers, users, and retailers that offer for sale, sell, and use the 325 Patent Accused Devices.

82.     Roku is on notice of the 325 Patent at least as of the filing of this complaint. In addition, Roku has had actual or constructive knowledge of the 325 Patent and its infringement prior to the filing of this Complaint.  At least as of September 2017, UEI informed Roku that it had over 30 issued and pending patents covering its control solutions.  It is believed that Roku investigated UEI's patents as a result and gained actual knowledge of the 325 Patent. Roku's own patents also have cited documents referring to UEI's patents over 290 times, which made Roku aware of UEI's patents. As a result, Roku at least engaged in willful blindness by taking deliberate actions to avoid confirming a high probability of infringement of the 325 Patent. Furthermore, it is believed Roku copied various aspects of UEI's patented technology, and Roku's copying shows Roku knew or should have known of the 325 Patent and intended to induce infringement. As such, Roku either knew or should have known about the existence of

1  the 325 Patent and that creating features in its devices to practice that patent would

2  induce infringement. Roku has induced and continue to induce end users of the 325

3  Patent Accused Products to infringe at least claim 1 of the 325 Patent within the meaning

4  of 35 U.S.C. § 271(b).

5      83.    Roku's acts of inducement include making, using, selling, and offering to

6  sell the 325 Patent Accused Products, as well as Roku's creation and dissemination of

7  promotional materials, marketing materials, and instruction guides that teach and

8  encourage end users to use the 325 Patent Accused Products in an infringing manner. For

9  example, the 325 Patent Accused Products provide step-by-step instruction on how an

10 end user should use these products in a manner that directly infringes the 325 Patent, and

11 Roku also provides further instruction in the "Setup and Troubleshooting" section of its

12 website. Roku, has a webpage, https://support.roku.com/en-gb/article/115012968247-

13 can-i-control-my-tv-with-the-remote-for-my-roku-streaming-player-, dedicated to

14 instructing users how to control devices using CEC. Roku also promotes controlling

15 devices' input via CEC as shown at the following webpage: https://support.roku.com/en-

16 gb/article/115008012587-why-does-my-tv-switch-to-a-different-device-when-trying-to-

17 use-my-roku-streaming-player-.

18     84.    Additionally, Roku has contributed to the infringement of claims of the 325

19 Patent within the meaning of 35 U.S.C. § 271(c). Specifically, Roku has contributed to

20 the end users infringement of the 325 Patent by, among other things, making, selling,

21 aiding, assisting, authorizing, advertising, marketing, promoting, providing for, and/or

22 encouraging the offer for sale, sale, and use of the 325 Patent Accused Products, which

23 Roku knew contain the software and features discussed above that are especially made or

24 adapted by Roku for infringing uses of claims of the 325 Patent. The software and

25 features discussed above are not staple articles of commerce suitable for substantial non-

26 infringing use. The direct infringers for Roku's contributory infringement include,

27 without limitation, its customers, users, and retailers that offer for sale, sell, and use the

28 325 Patent Accused Products.

85.     Roku's direct and indirect infringement of the 325 Patent has injured UEI, and UEI is entitled to recover damages adequate to compensate it for such infringement.

86.     Roku's infringement of the 325 Patent has been willful, wanton, malicious, and/or deliberate and constitutes egregious behavior justifying an award of enhanced damages.  More specifically, Roku knew or should have known about the 325 Patent and its infringement of that patent, as discussed above, but continued to engage in the using, making, offering to sell, and/or selling of the 325 Patent Accused Products despite an objectively high likelihood that this conduct would infringe the 325 Patent.

87.     Roku's infringing activities will continue to injure UEI unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further direct and indirect infringement of the 325 Patent.  If Roku's conduct is not stopped, UEI will continue to suffer competitive harm, irreparable injury, and significant damages.  Because UEI has no adequate remedy at law, UEI seeks, in addition to damages, preliminary and permanent injunctive relief.  UEI competes to supply remote control technology to companies like Roku and will continue suffering irreparable harm absent injunctive relief.

### COUNT FOUR

### INFRINGEMENT OF U.S. PATENT 9,716,853

88.     UEI incorporates the previous paragraphs of this Complaint as if fully set forth herein.

89.     UEI is the owner of all rights, title, and interest in the 853 Patent, including the right to bring this suit for injunctive relief and damages.

90.     The 853 Patent generally relates to devices that can optimize control of multiple consumer electronic devices.  At the time of the 853 Patent, a number of communication methods could be used between devices, including Wi-Fi, Bluetooth, and HDMI.  However, many manufacturers were slow to adopt newer methods, resulting in situations where multiple devices in the same room or network could only be operated via different communication methods.  The invention of the 853 Patent overcame these

1   limitations by creating a device that is adapted to allow for multiple communication

2   methods to facilitate communication across different communication mediums.

3       91.     The 853 Patent is valid and enforceable.  The claims of the 853 Patent are

4   directed to an inventive application in the field of remote control of consumer electronic

5   devices.  The combination of claim elements was not well-understood, routine, or

6   conventional to those in the field at the time of invention. In particular, it was not well-

7   understood, routine or conventional at the time of invention for a system utilize a

8   universal control engine to respond to a detected presence of an intended target appliance,

9   use an identity associated with the intended target appliance to create a listing of at least

10  two different communications for use in controlling each of at least two functional

11  operations of the intended target appliance and be capable of causing such control by a

12  remote control.

13      92.     Roku has infringed and continues to infringe literally and/or through the

14  doctrine of equivalents, one or more claims of the 853 Patent, including but not limited to

15  claim 1, by using, making, offering to sell, and/or selling without authority in the United

16  States certain universal control devices, including but not limited to the "Roku Ultra", the

17  "Roku 4," the "Roku TV" and any other Roku product that allows control of an external

18  device's volume or power via CEC or IR (the "853 Patent Accused Products").

19      93.     For purposes of example only, and without limitation, the 853 Patent

20  Accused Products perform every element of claim 1 of the 853 Patent when used as

21  intended by Roku. Roku also has infringed and continues infringes at least one other

22  claim of the 853 Patent.

23      94.     Claim 1 involves "A universal control engine."  The 853 Patent Accused

24  Products are universal control engines that allow control of external devices.

25      95.     Claim 1 further involves the universal control engine comprising "a

26  processing device."  The 853 Patent Accused Products contain a processor.

27      96.     Claim 1 further involves the universal control engine comprising "a memory

28  device having stored thereon instructions executable by the processing device."  The 853

Accused Products contain memory storing instructions in the form of software that is executable by the processing device.

97.    Claim 1 further involves the instructions when executed by the processing device "causing the universal control engine to respond to a detected presence of an intended target appliance within a logical topography of controllable appliances which includes the universal control engine by using an identity associated with the intended target appliance to create a listing comprised of at least a first communication method and a second communication method different than the first communication method for use in controlling each of at least a first functional operation and a second functional operation of the intended target appliance and to respond to a received request from a controlling device intended to cause the intended target appliance to perform a one of the first and second functional operations by causing a one of the first and second communication methods in the listing of communication methods that has been associated with the requested one of the first and second functional operations to be used to transmit to the intended target appliance a command for controlling the requested one of the first and second functional operations of the intended target appliance." The 853 Patent Accused Products can detect and respond the presence of target devices connected to a logical topography that includes the Products via HDMI. The Products' software creates a listing of a first and second communication methods for controlling first and second functional operations of a target appliance because it has information on how to control at least volume and power of certain devices via IR or CEC. When a user presses the volume or power button on Roku's remote, it causes the target appliance, such as a TV or audiovisual receiver, to perform the requested functional operation using one of the first and second communication methods, e.g., either IR or CEC.

98.    Roku has infringed and continue to infringe claims of the 853 Patent within the meaning of 35 U.S.C. § 271(a) through the foregoing activities, including at least making, using, selling, offering for sale, and/or importing the 853 Patent Accused Products.

99.     Roku has indirectly infringed and continue to indirectly infringe claims of the 853 Patent under § 271(b) by knowingly and actively inducing infringement of those claims by its customers and end users of its products.  The direct infringers that Roku has induced to infringe include, without limitation, Roku's customers, users, and retailers that offer for sale, sell, and use the 853 Patent Accused Devices.

100.     Roku is on notice of the 853 Patent at least as of the filing of this complaint. In addition, Roku has had actual or constructive knowledge of the 853 Patent and its infringement prior to the filing of this Complaint.  At least as of September 2017, UEI informed Roku that it had over 30 issued and pending patents covering its control solutions.  It is believed that Roku investigated UEI's patents as a result and gained actual knowledge of the 853 Patent. Roku's own patents also have cited documents referring to UEI's patents over 290 times, which made Roku aware of UEI's patents. Furthermore, it is believed Roku copied various aspects of UEI's patented technology, and Roku's copying shows Roku knew or should have known of the 853 Patent and intended to induce infringement. As a result, Roku at least engaged in willful blindness by taking deliberate actions to avoid confirming a high probability of infringement of the 853 Patent. As such, Roku either knew or should have known about the existence of the 853 Patent and that creating features in its devices to practice that patent would induce infringement. Roku has induced and continue to induce end users of the 853 Patent Accused Products to infringe at least claim 1 of the 853 Patent within the meaning of 35 U.S.C. § 271(b).

101.     Roku's acts of inducement include making, using, selling, and offering to sell the 853 Patent Accused Products, as well as Roku's creation and dissemination of promotional materials, marketing materials, and instruction guides that teach and encourage end users to use the 853 Patent Accused Products in an infringing manner. For example, the 853 Patent Accused Products provide step-by-step instruction on how an end user should use these products in a manner that directly infringes the 853 Patent, and Roku also provides further instruction in the "Setup and Troubleshooting" section of its

website.  Roku has a webpage, https://support.roku.com/en-gb/article/115013019828-how-to-set-up-your-roku-enhanced-remote-to-control-your-tv, dedicated to instructing users how to set up Roku Enhanced Remotes via wireless and infrared (IR) technologies to seamlessly control Roku streaming players and aspects of users' TV.  Roku also has a webpage, https://support.roku.com/en-gb/article/115012968247-can-i-control-my-tv-with-the-remote-for-my-roku-streaming-player-, dedicated to instructing users how to control devices using CEC.

102.   Additionally, Roku has contributed to the infringement of claims of the 853 Patent within the meaning of 35 U.S.C. § 271(c).  Specifically, Roku has contributed to the end users infringement of the 853 Patent by, among other things, making, selling, aiding, assisting, authorizing, advertising, marketing, promoting, providing for, and/or encouraging the offer for sale, sale, and use of the 853 Patent Accused Products, which Roku knew contain the software and features discussed above that are especially made or adapted by Roku for infringing uses of claims of the 853 Patent.  The software and features discussed above are not staple articles of commerce suitable for substantial non-infringing use.  The direct infringers for Roku's contributory infringement include, without limitation, its customers, users, and retailers that offer for sale, sell, and use the 853 Patent Accused Products.

103.   Roku's direct and indirect infringement of the 853 Patent has injured UEI, and UEI is entitled to recover damages adequate to compensate it for such infringement.

104.   Roku's infringement of the 853 Patent has been willful, wanton, malicious, and/or deliberate and constitutes egregious behavior justifying an award of enhanced damages.  More specifically, Roku knew or should have known about the 853 Patent and its infringement of that patent, as discussed above, but continued to engage in the using, making, offering to sell, and/or selling of the 853 Patent Accused Products despite an objectively high likelihood that this conduct would infringe the 853 Patent.

105.   Roku's infringing activities will continue to injure UEI unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining

further direct and indirect infringement of the 853 Patent.  If Roku's conduct is not stopped, UEI will continue to suffer competitive harm, irreparable injury, and significant damages.  Because UEI has no adequate remedy at law, UEI seeks, in addition to damages, preliminary and permanent injunctive relief.  UEI competes to supply remote control technology to companies like Roku and will continue suffering irreparable harm absent injunctive relief.

## COUNT FIVE

## INFRINGEMENT OF U.S. PATENT 7,782,309

106.   UEI incorporates the previous paragraphs of this Complaint as if fully set forth herein.

107.   UEI is the owner of all rights, title, and interest in the 309 Patent, including the right to bring this suit for injunctive relief and damages

108.   The 309 Patent generally relates to a method for using a remote control device with a dual-mode touch sensitive display.  Prior art remote control devices used Graphical User Interfaces ("GUIs") to present multiple user interfaces on one controlling device in order to command functions on a target device.  Prior art controlling devices, however, were limited to one mode of user interaction (such as pressing a button or soft key) in order to command target devices.  The 309 Patent improves upon the prior art by providing two modes of user interaction via a touchscreen to better enable remote cursor control functionality on a target device.

109.   The 309 Patent is valid and enforceable.  The claims of the 309 Patent are directed to an inventive application in the field of remote control of consumer electronic devices.  The combination of claim elements was not well-understood, routine, or conventional to those in the field at the time of invention.  Specifically, the use of graphical user interfaces on a remote control application, and dual-mode touch sensitive displays were not routine or conventional in the art at the time of invention.

110.   UEI has provided notice to the public of the 309 Patent via marking it on UEI's NevoSmart App on its "About" screen.

111.   Roku has infringed and continues to infringe literally and/or through the doctrine of equivalents, one or more claims of the 309 Patent, including but not limited to claim 1, by using, making, offering to sell, and/or selling without authority in the United States certain universal control devices, including but not limited to smartphones and tablets with the "Roku Mobile App" installed (the "309 Patent Accused Products").

112.   For purposes of example only, and without limitation, the 309 Patent Accused Products perform every step of claim 1 of the 309 Patent, which relates to a method of using a remote control device with a dual-mode touch sensitive display. Roku also has infringed and continues infringes at least one other claim of the 309 Patent.

113.   The method of claim 1 involves "using a universal controlling device comprised of a display having a touch-sensitive surface." The 309 Patent Accused Products include a universal controlling device with a display having a touch-sensitive surface.

114.   The method of claim 1 further involves "causing one or more graphical user interfaces comprised of graphical user interface icons to be displayed in the display of the universal controlling device." The 309 Patent Accused Products include various graphical user interfaces that display on the user's smartphone. For example, the Roku Swipe Remote includes several graphical user interface icons, such a play button, a keyboard button, and a home button. The Swipe Remote also includes a field in the middle of the screen with the text "Swipe to move; Tap to select."

115.   The method of claim 1 further involves "accepting via the touch-sensitive surface of the universal controlling device a first input type indicative of a selection of a displayed graphical user interface icon." Users select icons on the Swipe Remote GUI by using a tapping motion (a first input type). For example, users select the home icon at the top of the Swipe Remote to return to the home screen, or the play button to play selected content.

116.   The method of claim 1 further involves "causing the universal controlling device to transmit to the one or more appliances first data representative of the displayed

graphical user interface icon selected by the first input type." When a user taps the play button, for example, the play command is transmitted to the connected Roku device (such as a Roku TV, Roku Ultra, Roku Express, etc.) and the selected content will begin to play.

117.   The method of claim 1 further involves "accepting via the touch-sensitive surface of the universal controlling device a second input type indicative of a motion made across the touch-sensitive surface." Users swipe (a second input type) on the Swipe Remote to browse content.

118.   The method of claim 1 further involves "causing the universal controlling device to transmit to the one or more appliances second data representative of the motion made across the touch-sensitive surface provided by the second input type." When a user swipes on the Swipe Remote, the input is transmitted to the connected Roku device and moves through the content screens on the connected TV. For example, when the user is within the channel selection screen, a swipe on the Swipe Remote moves the onscreen cursor to the next channel, or moves to the next page of available channels.

119.   The method of claim 1 further involves "causing the universal controlling device to distinguish the first input type received via the touch-sensitive surface from the second input type received via the touch-sensitive surface." The 309 Patent Accused Products distinguish between the first input type received and the second input type received from the touch-sensitive surface, because tapping motions are used to select content while swiping motions are used to browse content on the Swipe Remote.

120.   Roku has infringed and continues to infringe claims of the 309 Patent within the meaning of 35 U.S.C. § 271(a) through the foregoing activities, including at least making, using, selling, offering for sale, and/or importing the 309 Patent Accused Products.

121.   Roku has performed each and every element of claim 1 of the 309 Patent during at least its own product development and testing of the 309 Patent Accused Products.

122.   Roku has indirectly infringed and continues to indirectly infringe at least claim 1 of the 309 Patent under § 271(b) by knowingly and actively inducing infringement of those claims by its customers and end users of its products.  The direct infringers that Roku has induced to infringe include, without limitation, Roku's customers and that offer for sale, sell, and use the 309 Patent Accused Products.

123.   Roku is on notice of the 309 Patent at least as of the filing of this complaint. In addition, Roku has had actual or constructive knowledge of the 309 Patent and its infringement prior to the filing of this Complaint.  As stated above, UEI has marked the 309 Patent via its NevoSmart App on its "About" screen.  Further, at least as of September 2017, UEI informed Roku that it had over 30 issued and pending patents covering its control solutions.  It is believed that Roku investigated UEI's patents as a result and gained actual knowledge of the 309 Patent. Roku's own patents also have cited documents referring to UEI's patents over 290 times, which made Roku aware of UEI's patents. Furthermore, it is believed Roku copied various aspects of UEI's patented technology, and Roku's copying shows Roku knew or should have known of the 309 Patent and intended to induce infringement. As a result, Roku at least engaged in willful blindness by taking deliberate actions to avoid confirming a high probability of infringement of the 309 Patent. As such, Roku either knew or should have known about the existence of the 309 Patent and that creating features in its devices to practice that patent would induce infringement. Roku has induced and continue to induce end users of the 309 Patent Accused Products to infringe at least claim 1 of the 309 Patent within the meaning of 35 U.S.C. § 271(b).

124.   Roku induces infringement by its customers and users by instructing an encouraging them to download and use the Roku Mobile App.  Encouragement and instructions to download the Roku Mobile App appear on the setup screen during the setup of a Roku Device.   Encouragement and instructions to download the Roku Mobile App appear on the setup screen during the setup of a Roku Device, and on the Roku website at https://www.roku.com/mobile-app. For example, Roku provides step-by-step

instruction on how an end user should use these products in a manner that directly infringes the 309 Patent, and Roku also provides further instruction in the "Setup and Troubleshooting" section of its website. Roku further has a webpage https://support.roku.com/article/115002681087-how-to-control-your-roku-streaming-device-using-the-roku-mobile-app dedicated to instructing users how to the swipe and touch functions of the Roku Mobile App. Examples include, without limitation, Roku's detailed instructions on the differences between controlling a Roku using the "traditional" and "Swipe" functionality.

125.   Roku's direct and indirect infringement of the 309 Patent has injured UEI, and UEI is entitled to recover damages adequate to compensate it for such infringement.

126.   Roku's infringement of the 309 Patent has been willful, wanton, malicious, and/or deliberate and constitutes egregious behavior justifying an award of enhanced damages.  More specifically, Roku knew or should have known about the 309 Patent and its infringement of that patent, as discussed above, but continued to engage in the using, making, offering to sell, and/or selling of the 309 Patent Accused Products despite an objectively high likelihood that this conduct would infringe the 309 Patent.

127.   Roku's infringing activities will continue to injure UEI unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further direct and indirect infringement of the 309 Patent.  If Roku's conduct is not stopped, UEI will continue to suffer competitive harm, irreparable injury, and significant damages.  Because UEI has no adequate remedy at law, UEI seeks, in addition to damages, preliminary and permanent injunctive relief.  UEI competes to supply remote control technology to companies like Roku and will continue suffering irreparable harm absent injunctive relief.

## COUNT SIX

## INFRINGEMENT OF U.S. PATENT 7,821,504

128.   UEI incorporates the previous paragraphs of this Complaint as if fully set forth herein.

129.   UEI is the owner of all rights, title, and interest in the 504 Patent, including the right to bring this suit for injunctive relief and damages.

130.   The 504 Patent generally relates to a method for using a remote control device with a dual-mode touch sensitive display.  Prior art remote control devices used Graphical User Interfaces ("GUIs") to present multiple user interfaces on one controlling device in order to command functions on a target device.  Prior art controlling devices, however, were limited to one mode of user interaction (such as pressing a button or soft key) in order to command target devices.  The 504 Patent improves upon the prior art by providing two modes of user interaction via a touchscreen to better enable remote cursor control functionality on a target device.

131.   The 504 Patent is valid and enforceable.  The claims of the 504 Patent are directed to an inventive application in the field of remote control of consumer electronic devices.  The combination of claim elements was not well-understood, routine, or conventional to those in the field at the time of invention.  Specifically, the use of graphical user interfaces on a remote control application, and dual-mode touch sensitive displays were not routine or conventional in the art at the time of invention

132.   UEI has provided notice to the public of the 504 Patent via marking it on UEI's NevoSmart App on its "About" screen.

133.   Roku has infringed and continues to infringe literally and/or through the doctrine of equivalents, one or more claims of the 504 Patent, including but not limited to claim 1, by using, making, offering to sell, and/or selling without authority in the United States certain universal control devices, including but not limited to smartphones and tablets with the "Roku Mobile App" installed (the "504 Patent Accused Products").

134.   For purposes of example only, and without limitation, the 504 Patent Accused Products perform every step of claim 1 of the 504 Patent, which relates to a method of using a remote control device with a dual-mode touch sensitive display. Roku also has infringed and continues infringes at least one other claim of the 504 Patent.

135.   The method of claim 1 involves "using a universal controlling device

comprised of a touch-sensitive surface." The 504 Patent Accused Products include a universal controlling device with a display having a touch-sensitive surface.

136.   The method of claim 1 further involves "accepting via the touch-sensitive surface of the universal controlling device a first input type indicative of a static touch made upon the touch-sensitive surface." On the home screen of the Roku Mobile App, a user uses a static touch to select various options, such as one of the available channels or to select one of the icons at the bottom of the screen including "What's On"; "Channels"; "Remote"; "Photos+"; or "Settings."

137.   The method of claim 1 further involves "causing the universal controlling device to transmit first data used to command at least a first functional operation of the one or more appliances, the first data being representative of the static touch made upon the touch-sensitive surface." When a user makes a tapping motion to make a selection on the Roku Mobile App home screen, data is transferred to the connected Roku device to command a functional operation of an appliance, for example, by playing the selected content on the appliance, changing menus or controlling power.

138.   The method of claim 1 further involves "accepting via the touch-sensitive surface of the universal controlling device a second input type indicative of a moving touch made across the touch-sensitive surface." A user uses a swiping motion on the Roku Mobile App home screen to navigate content, such as available channels.

139.   The method of claim 1 further involves "causing the universal controlling device to transmit second data used to command at least a second functional operation of the one or more appliances, the second data being representative of the moving touch made across the touch-sensitive surface." When a user swipes on the home screen of the Roku Mobile App, data is transmitted to the connected Roku device to move through the list of available channels on the screen of the TV.

140.   The method of claim 1 further involves "causing the universal controlling device to distinguish the first input type received via the touch-sensitive surface from the second input type received via the touch-sensitive surface." The 504 Patent Accused

Products distinguish between the first input type received and the second input type received from the touch-sensitive surface, because tapping motions are used to select content while swiping motions are used to browse content on the Roku Mobile App home screen.

141.   Roku has infringed and continues to infringe claims of the 504 Patent within the meaning of 35 U.S.C. § 271(a) through the foregoing activities, including at least making, using, selling, offering for sale, and/or importing the 504 Patent Accused Products.

142.   Roku has performed each and every element of claim 1 of the 504 Patent during at least its own product development and testing of the 504 Patent Accused Products.

143.   Roku has indirectly infringed and continues to indirectly infringe at least claim 1 of the 504 Patent under § 271(b) by knowingly and actively inducing infringement of those claims by its customers and end users of its products.  The direct infringers that Roku has induced to infringe include, without limitation, Roku's customers and that offer for sale, sell, and use the 504 Patent Accused Products.

144.   Roku is on notice of the 504 Patent at least as of the filing of this complaint. In addition, Roku has had actual or constructive knowledge of the 504 Patent and its infringement prior to the filing of this Complaint.  As stated above, UEI has marked the 504 Patent via its NevoSmart App on its "About" screen.  Further, at least as of September 2017, UEI informed Roku that it had over 30 issued and pending patents covering its control solutions.  It is believed that Roku investigated UEI's patents as a result and gained actual knowledge of the 504 Patent. Roku's own patents also have cited documents referring to UEI's patents over 290 times, which made Roku aware of UEI's patents. Furthermore, it is believed Roku copied various aspects of UEI's patented technology, and Roku's copying shows Roku knew or should have known of the 504 Patent and intended to induce infringement. As a result, Roku at least engaged in willful blindness by taking deliberate actions to avoid confirming a high probability of

infringement of the 504 Patent. As such, Roku either knew or should have known about the existence of the 504 Patent and that creating features in its devices to practice that patent would induce infringement. Roku has induced and continue to induce end users of the 504 Patent Accused Products to infringe at least claim 1 of the 504 Patent within the meaning of 35 U.S.C. § 271(b).

145.   Roku induces infringement by its customers and users by instructing an encouraging them to download and use the Roku Mobile App.  Encouragement and instructions to download the Roku Mobile App appear on the setup screen during the setup of a Roku Device.   Encouragement and instructions to download the Roku Mobile App appear on the setup screen during the setup of a Roku Device, and on the Roku website at https://www.roku.com/mobile-app. For example, Roku provides step-by-step instruction on how an end user should use these products in a manner that directly infringes the 504 Patent, and Roku also provides further instruction in the "Setup and Troubleshooting" section of its website. Roku further has a webpage https://support.roku.com/article/115002681087-how-to-control-your-roku-streaming-device-using-the-roku-mobile-app dedicated to instructing users how to the swipe and touch functions of the Roku Mobile App. Examples include, without limitation, Roku's detailed instructions on the differences between controlling a Roku using the "traditional" and "Swipe" functionality.

146.   Roku's direct and indirect infringement of the 504 Patent has injured UEI, and UEI is entitled to recover damages adequate to compensate it for such infringement.

147.   Roku's infringement of the 504 Patent has been willful, wanton, malicious, and/or deliberate and constitutes egregious behavior justifying an award of enhanced damages.  More specifically, Roku knew or should have known about the 504 Patent and its infringement of that patent, as discussed above, but continued to engage in the using, making, offering to sell, and/or selling of the 504 Patent Accused Products despite an objectively high likelihood that this conduct would infringe the 504 Patent.

148.   Roku's infringing activities will continue to injure UEI unless and until this

34

Court enters an injunction prohibiting further infringement and, specifically, enjoining further direct and indirect infringement of the 504 Patent.  If Roku's conduct is not stopped, UEI will continue to suffer competitive harm, irreparable injury, and significant damages.  Because UEI has no adequate remedy at law, UEI seeks, in addition to damages, preliminary and permanent injunctive relief.  UEI competes to supply remote control technology to companies like Roku and will continue suffering irreparable harm absent injunctive relief.

## COUNT SEVEN

## INFRINGEMENT OF U.S. PATENT 7,821,505

149.   UEI incorporates the previous paragraphs of this Complaint as if fully set forth herein.

150.   UEI is the owner of all rights, title, and interest in the 505 Patent, including the right to bring this suit for injunctive relief and damages.

151.   The 505 Patent generally relates to a universal controlling device with a dual-mode touch sensitive display.  Prior art remote control devices used Graphical User Interfaces ("GUIs") to present multiple user interfaces on one controlling device in order to command functions on a target device.  Prior art controlling devices, however, were limited to one mode of user interaction (such as pressing a button or soft key).  The 505 Patent improves upon the prior art by providing two modes of user interaction via a touchscreen to better enable remote cursor control functionality on a target device.

152.   The 505 Patent is valid and enforceable.  The claims of the 505 Patent are directed to an inventive application in the field of remote control of consumer electronic devices.  The combination of claim elements was not well-understood, routine, or conventional to those in the field at the time of invention.  Specifically, the use of graphical user interfaces on a remote control application, and dual-mode touch sensitive displays were not routine or conventional in the art at the time of invention.

153.   UEI has provided notice to the public of the 505 Patent via marking it on UEI's NevoSmart App on its "About" screen.

154.   Roku has infringed and continues to infringe literally and/or through the doctrine of equivalents, one or more claims of the 505 Patent, including but not limited to claim 1, by using, making, offering to sell, and/or selling without authority in the United States certain universal control devices, including but not limited to smartphones and tablets with the "Roku Mobile App" installed (the "505 Patent Accused Products").

155.   For purposes of example only, and without limitation, the 505 Patent Accused Products include every element of claim 1 of the 505 Patent, which relates to a universal controlling device with a dual-mode touch sensitive display. Roku also has infringed and continues infringes at least one other claim of the 505 Patent.

156.   Claim 1 involves a universal controlling device.  The 505 Patent Accused Products are universal controlling devices capable of controlling various Roku devices (such as the Roku Ultra, Roku Express, and Roku TV) and other home entertainment appliances (like sound systems and Blu-Ray players).

157.   The device of claim 1 further involves "a display having a touch-sensitive surface in which is displayed a plurality of graphical user interface icons."  The 505 Patent Accused Products include a touch-sensitive surface (the smartphone screen), and plurality of GUI icons.  The Roku Mobile App home screen includes several GUI icons, such as icons for different content channels, and icons at the bottom of the screen including "What's On"; "Channels"; "Remote"; "Photos+"; or "Settings." Users are further presented with options for static touch within the Swipe Remote GUI to select TV GUI interface elements when browsing menus on the TV GUI using the Roku Mobile App with Swipe Remote.

158.   The device of claim 1 further involves "a transmitter for transmitting data for commanding functional operations of one or more appliances located remotely from the controlling device."  The 505 Patent Accused Products contain a WiFi transmitter to control remote appliances, including at least various Roku boxes and Roku TVs, but also connected audio devices such as sound bars, AVRs and Roku TV Wireless Speakers.

159.   The device of claim 1 further involves "a processing device for causing the

transmitter to transmit data in response to input provided to the touch-sensitive surface." The 505 Patent Accused Products contain microprocessors for processing app data, such as data associated with input from a touchscreen.

160.   The device of claim 1 further involves "in response to the touch-sensitive surface of the universal controlling device being provided a first input type indicative of a selection of a one of the plurality of displayed graphical user interface icons, the processing device causes the transmitter to transmit first data for commanding at least a first functional operation of the one or more appliances with the first data being representative of the one of the plurality of graphical user interface icon selected by the first input type."  The home screen of the Roku Mobile App allows the user to use a static touch (a first input type) to select various options, such as one of the available channels or to select one of the icons at the bottom of the screen including "What's On"; "Channels"; "Remote"; "Photos+"; or "Settings."  When a user makes a tapping motion to make a selection on the home screen, data is transferred to the connected Roku device to command a functional operation of an appliance by, for example, playing the selected content on the TV. Users are further presented with options for static touch within the Swipe Remote GUI to select TV GUI interface elements when browsing menus on the TV GUI using the Roku Mobile App with Swipe Remote.

161.   The device of claim 1 further involves "in response to the touch-sensitive surface being provided a second input type indicative of a motion made across the touch-sensitive surface, the processing device causes the transmitter to transmit second data for commanding at least a second functional operation of the one or more appliances with the second data being representative of the motion made across the touch-sensitive surface provided by the second input type."  The Roku Mobile App allows a user to use a swiping motion (a second input type) on the home screen to navigate content, such as available channels.  When a user swipes on the home screen of the Swipe Remote GUI of the Roku Mobile App, data is transmitted to the connected Roku device to move through the list of available channels and content on the screen of the TV.  Users can

similarly swipe through photos and music using a moving touch feature of the Photos+ function of the Roku Mobile App.

162. The device of claim 1 further involves "the processing device is programmed to distinguish the first input type provided to the touch-sensitive surface from the second input type provided to the touch-sensitive surface." The 505 Patent Accused Products can distinguish between the first input type received and the second input type received from the touch-sensitive surface, because tapping motions are used to select content while swiping motions are used to browse content on the Swipe Remote GUI, Photos+ feature, and Roku Mobile App home screen.

163. Roku has infringed and continues to infringe claims of the 505 Patent within the meaning of 35 U.S.C. § 271(a) through the foregoing activities, including at least making, using, selling, offering for sale, and/or importing the 505 Patent Accused Products.

164. Roku has performed each and every element of claim 1 of the 505 Patent during at least its own product development and testing of the 505 Patent Accused Products.

165. Roku has indirectly infringed and continues to indirectly infringe at least claim 1 of the 505 Patent under § 271(b) by knowingly and actively inducing infringement of those claims by its customers and end users of its products. The direct infringers that Roku has induced to infringe include, without limitation, Roku's customers and that offer for sale, sell, and use the 505 Patent Accused Products.

166. Roku is on notice of the 505 Patent at least as of the filing of this complaint. In addition, Roku has had actual or constructive knowledge of the 505 Patent and its infringement prior to the filing of this Complaint. As stated above, UEI has marked the 505 Patent via its NevoSmart App on its "About" screen. Further, at least as of September 2017, UEI informed Roku that it had over 30 issued and pending patents covering its control solutions. It is believed that Roku investigated UEI's patents as a result and gained actual knowledge of the 505 Patent. Roku's own patents also have cited

documents referring to UEI's patents over 290 times, which made Roku aware of UEI's patents. Furthermore, it is believed Roku copied various aspects of UEI's patented technology, and Roku's copying shows Roku knew or should have known of the 505 Patent and intended to induce infringement. As a result, Roku at least engaged in willful blindness by taking deliberate actions to avoid confirming a high probability of infringement of the 505 Patent. As such, Roku either knew or should have known about the existence of the 505 Patent and that creating features in its devices to practice that patent would induce infringement. Roku has induced and continue to induce end users of the 505 Patent Accused Products to infringe at least claim 1 of the 505 Patent within the meaning of 35 U.S.C. § 271(b).

167.   Roku induces infringement by its customers and users by instructing an encouraging them to download and use the Roku Mobile App.  Encouragement and instructions to download the Roku Mobile App appear on the setup screen during the setup of a Roku Device.   Encouragement and instructions to download the Roku Mobile App appear on the setup screen during the setup of a Roku Device, and on the Roku website at https://www.roku.com/mobile-app. For example, Roku provides step-by-step instruction on how an end user should use these products in a manner that directly infringes the 505 Patent, and Roku also provides further instruction in the "Setup and Troubleshooting" section of its website. Roku further has a webpage https://support.roku.com/article/115002681087-how-to-control-your-roku-streaming-device-using-the-roku-mobile-app dedicated to instructing users how to the swipe and touch functions of the Roku Mobile App. Examples include, without limitation, Roku's detailed instructions on the differences between controlling a Roku using the "traditional" and "Swipe" functionality.

168.   Roku's direct and indirect infringement of the 505 Patent has injured UEI, and UEI is entitled to recover damages adequate to compensate it for such infringement.

169.   Roku's infringement of the 505 Patent has been willful, wanton, malicious, and/or deliberate and constitutes egregious behavior justifying an award of enhanced

damages.  More specifically, Roku knew or should have known about the 505 Patent and its infringement of that patent, as discussed above, but continued to engage in the using, making, offering to sell, and/or selling of the 505 Patent Accused Products despite an objectively high likelihood that this conduct would infringe the 505 Patent.

170.   Roku's infringing activities will continue to injure UEI unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further direct and indirect infringement of the 505 Patent.  If Roku's conduct is not stopped, UEI will continue to suffer competitive harm, irreparable injury, and significant damages.  Because UEI has no adequate remedy at law, UEI seeks, in addition to damages, preliminary and permanent injunctive relief.  UEI competes to supply remote control technology to companies like Roku and will continue suffering irreparable harm absent injunctive relief.

## COUNT EIGHT

## INFRINGEMENT OF U.S. PATENT 7,895,532

171.   UEI incorporates the previous paragraphs of this Complaint as if fully set forth herein.

172.   UEI is the owner of all rights, title, and interest in the 532 Patent, including the right to bring this suit for injunctive relief and damages.

173.   The 532 Patent generally relates to a user interface for a remote control application.  Prior art universal remote controls relied on numerous hard keys for control, such that the control interface became more crowded and less user friendly on remotes able to control a greater number of appliances.  The 532 Patent family relates to remote control applications with GUIs that allow for control of a large number of appliances while maintaining a simple user interface.

174.   The 532 Patent is valid and enforceable.  The claims of the 532 Patent are directed to an inventive application in the field of remote control of consumer electronic devices.  The combination of claim elements was not well-understood, routine, or conventional to those in the field at the time of invention.  Specifically, the use of GUIs

on a remote control application was not routine or conventional in the art at the time of invention. In particular, the specific combination of claimed elements such as presenting representations of at least one appliance controllable by the controlling device, automatically creating a sequence of instructions on the controlling device for one or more interactions with at least one controllable appliance, and causing the sequence of instructions to be executed in response to selection of a user input element of the controlling device was not well-understood, routine, or conventional to those in the field at the time of invention.

175.   Roku has infringed and continues to infringe literally and/or through the doctrine of equivalents, one or more claims of the 532 Patent, including but not limited to claim 10, by using, making, offering to sell, and/or selling without authority in the United States certain universal control devices, including but not limited to smartphones and tablets with the "Roku Mobile App" installed (the "532 Patent Accused Products").

176.   For purposes of example only, and without limitation, the 532 Patent Accused Products perform every step of claim 10 of the 532 Patent, which relates to a method for using GUIs with a remote control application. Roku also has infringed and continues infringes at least one other claim of the 532 Patent.

177.   The method of claim 10 involves "presenting to a user a graphical user interface including a representations of at least one appliance controllable by the controlling device." During at least the pairing process of the Roku Mobile App with a Roku device, a GUI on the 532 Patent Accused Products presents to the user a list of Roku devices controllable by the App such as the Roku TV, Roku Ultra, and others.

178.   The method of claim 10 further involves "using a program to automatically create the sequence of instructions to be executed by the controlling device such that the sequence of instructions reflects one or more interactions by the user with the representations of the at least one appliance controllable by the controlling device presented via the graphical user interface." The Roku Mobile App includes a program that automatically creates a sequences of instructions based on a user's interaction with

the representations of controllable devices, including the user selection of which Roku device to control with a 532 Patent Accused Product.

179.   The method of claim 10 further involves "causing the automatically created sequence of instructions to be executed by the controlling device in response to a selection of a user input element of the controlling device."  When a user of the Roku Mobile App selects one of the controllable devices from the list of representations, the Mobile App in response executes the sequence of instructions automatically connecting the 532 Patent Accused Products to the selected Roku device.

180.   Roku has infringed and continues to infringe claims of the 532 Patent within the meaning of 35 U.S.C. § 271(a) through the foregoing activities, including at least making, using, selling, offering for sale, and/or importing the 532 Patent Accused Products.

181.   Roku has performed each and every element of claim 1 of the 532 Patent during at least its own product development and testing of the 532 Patent Accused Products.

182.   Roku has indirectly infringed and continues to indirectly infringe at least claim 1 of the 532 Patent under § 271(b) by knowingly and actively inducing infringement of those claims by its customers and end users of its products.  The direct infringers that Roku has induced to infringe include, without limitation, Roku's customers and that offer for sale, sell, and use the 532 Patent Accused Products.

183.   Roku is on notice of the 532 Patent at least as of the filing of this complaint. In addition, Roku has had actual or constructive knowledge of the 532 Patent and its infringement prior to the filing of this Complaint.  Further, at least as of September 2017, UEI informed Roku that it had over 30 issued and pending patents covering its control solutions.  It is believed that Roku investigated UEI's patents as a result and gained actual knowledge of the 532 Patent. Roku's own patents also have cited documents referring to UEI's patents over 290 times, which made Roku aware of UEI's patents. Furthermore, it is believed Roku copied various aspects of UEI's patented technology, and Roku's

copying shows Roku knew or should have known of the 532 Patent and intended to induce infringement. As a result, Roku at least engaged in willful blindness by taking deliberate actions to avoid confirming a high probability of infringement of the 532 Patent. As such, Roku either knew or should have known about the existence of the 532 Patent and that creating features in its devices to practice that patent would induce infringement. Roku has induced and continue to induce end users of the 532 Patent Accused Products to infringe at least claim 10 of the 532 Patent within the meaning of 35 U.S.C. § 271(b).

184.   Roku induces infringement by its customers and users by instructing an encouraging them to download and use the Roku Mobile App.  Encouragement and instructions to download the Roku Mobile App appear on the setup screen during the setup of a Roku Device.   Encouragement and instructions to download the Roku Mobile App appear on the setup screen during the setup of a Roku Device, and on the Roku website at https://www.roku.com/mobile-app. For example, Roku provides step-by-step instruction on how an end user should use these products in a manner that directly infringes the 532 Patent, and Roku also provides further instruction in the "Setup and Troubleshooting" section of its website. Roku further has a webpage https://support.roku.com/article/217288467-how-to-install-the-roku-mobile-app dedicated to instructing users how to set up Roku Mobile App and connect it to Roku devices using the infringing process, explaining, "When the Roku mobile app launches it will discover any Roku devices on your network. Select the Roku device you wish to control using your Roku mobile app. You will then be taken to the home screen where you will be able to control your Roku device."

185.   Roku's direct and indirect infringement of the 532 Patent has injured UEI, and UEI is entitled to recover damages adequate to compensate it for such infringement.

186.   Roku's infringement of the 532 Patent has been willful, wanton, malicious, and/or deliberate and constitutes egregious behavior justifying an award of enhanced damages.  More specifically, Roku knew or should have known about the 532 Patent and

its infringement of that patent, as discussed above, but continued to engage in the using, making, offering to sell, and/or selling of the 532 Patent Accused Products despite an objectively high likelihood that this conduct would infringe the 532 Patent.

187.   Roku's infringing activities will continue to injure UEI unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further direct and indirect infringement of the 532 Patent.  If Roku's conduct is not stopped, UEI will continue to suffer competitive harm, irreparable injury, and significant damages.  Because UEI has no adequate remedy at law, UEI seeks, in addition to damages, preliminary and permanent injunctive relief.  UEI competes to supply remote control technology to companies like Roku and will continue suffering irreparable harm absent injunctive relief.

## **COUNT NINE**
## **INFRINGEMENT OF U.S. PATENT 8,015,446**

188.   UEI incorporates the previous paragraphs of this Complaint as if fully set forth herein.

189.   UEI is the owner of all rights, title, and interest in the 446 Patent, including the right to bring this suit for injunctive relief and damages.

190.   The 446 Patent generally relates to a method for debugging a remote control application.  Prior art universal remote control applications were not able to be properly debugged after the initial sale to consumers, leading to problems in the field that could not be corrected.  The 446 Patent family relates to a remote control application that allows for debugging information from interactions with the remote control to be provided to a support team.  The 446 Patent describes a method for debugging this remote control application by recording data associated with user interactions with the application and synchronizing that data with servers for access by a support team.

191.   The 446 Patent is valid and enforceable.  The claims of the 446 Patent are directed to an inventive application in the field of remote control of consumer electronic devices.  The combination of claim elements was not well-understood, routine, or

conventional to those in the field at the time of invention.  Specifically, the use of GUIs on a remote control application, and capturing data associated with user interactions with that interface for use in debugging were not routine or conventional in the art at the time of invention.

192.   Roku has infringed and continues to infringe literally and/or through the doctrine of equivalents, one or more claims of the 446 Patent, including but not limited to claim 1, by using, making, offering to sell, and/or selling without authority in the United States certain universal control devices, including but not limited to the "Roku Mobile App", and any other Roku product that stores data related to user interaction with remote control applications (the "446 Patent Accused Products").

193.   For purposes of example only, and without limitation, the 446 Patent Accused Products include every element of claim 1 of the 446 Patent, which relates to a method for debugging a remote control application. Roku also has infringed and continues infringes at least one other claim of the 446 Patent.

194.   The method of claim 1 involves "storing within a memory of the controlling device data captured during operation of the controlling device, the data being representative of a user interaction with a user interface element of the controlling device and an action occurring within the remote control application of the controlling device resulting from the user interaction with the user interface element of the controlling device."  The 446 Patent Accused Products store numerous types of data captured during operation of the Roku remotes and Roku Mobile App.  Section I.B.3 of the Roku Privacy Policy (available at https://docs.roku.com/doc/userprivacypolicy/en-us) states that "[w]e receive information about your interactions with the Roku Services, such as when you access the Roku Services, your search history, search results, audio information when you use voice-enabled features, channels you access (including usage statistics such as what channels you access, the time you access them, and how long you spend viewing them), interactions with content and advertisements, and settings and preferences."  The "Roku Services" are defined to include the Roku Mobile App.  The Privacy Policy

45

further states that "[i[f you use Roku's mobile apps, in addition to the other usage information described in this section, we also log whether you use a feature called Play on Roku to play content stored on your mobile device (such as music, photos, or videos) through the Roku Device connected with Roku's mobile apps. To let you play videos, photos and music stored on your mobile device on your TV through the Roku Device, Roku's mobile apps may need permissions to access the content and other information stored on your mobile device."  Thus, the 446 Patent Accused Products capture information relating to a user's interaction with the device, such as use of certain features, settings, and user preferences.

195.   The method of claim 1 further involves "causing the controlling device to upload the captured data to a computer in communication with the controlling device whereby the uploaded captured data is available for use in debugging the remote control application of the controlling device."  As described in the above-quoted Privacy Policy, Roku collects information about user activity, which it stores in "electronic databases of personal information."  Thus, the 446 Patent Accused Products transmit the collected data to a server for access by Roku.  The server is a computer in communication with the controlling device. The Privacy Policy explains in Section II (titled "Information Usage"), subsection A (titled "Use by or on Behalf of Roku") that the captured data is used "to provide and maintain the Roku Services" and to "to understand and analyze our user base and how you use the Roku Services, and to improve and enhance the Roku Services, and to develop new products, services, features and functionality."   Improving and enhancing the Roku Services, and developing new features and functionality includes "debugging" as that term is commonly understood in the software industry.  For example, the release notes for Roku OS 8 software (available at https://blog.roku.com/roku-os-8-release-notes) describes numerous examples of "bug fixes" contained in the software update, such as "[f]ixed multiple bugs that caused Roku devices to reboot intermittently when steaming specific channels"; "[f]ixed a bug in which color banding would appear on the screen for some Roku TV models when entering USB media player"; and "[f]ixed

a bug in which audio would not mute immediately after some Roku TV models were turned off."

196.   Roku has infringed and continues to infringe claims of the 446 Patent within the meaning of 35 U.S.C. § 271(a) through the foregoing activities, including at least making, using, selling, offering for sale, and/or importing the 446 Patent Accused Products.

197.   Roku has performed each and every element of claim 1 of the 446 Patent during at least its own product development and testing of the 446 Patent Accused Products.

198.   Roku has indirectly infringed and continues to indirectly infringe at least claim 1 of the 446 Patent under § 271(b) by knowingly and actively inducing infringement of those claims vis a vis its customers and end users of its products.  The direct infringers that Roku has induced to infringe include, without limitation, Roku's customers and that offer for sale, sell, and use the 446 Patent Accused Products.

199.   Roku is on notice of the 446 Patent at least as of the filing of this complaint. In addition, Roku has had actual or constructive knowledge of the 446 Patent and its infringement prior to the filing of this Complaint.  Further, at least as of September 2017, UEI informed Roku that it had over 30 issued and pending patents covering its control solutions.  It is believed that Roku investigated UEI's patents as a result and gained actual knowledge of the 446 Patent. Roku's own patents also have cited documents referring to UEI's patents over 290 times, which made Roku aware of UEI's patents. Furthermore, it is believed Roku copied various aspects of UEI's patented technology, and Roku's copying shows Roku knew or should have known of the 446 Patent and intended to induce infringement. As a result, Roku at least engaged in willful blindness by taking deliberate actions to avoid confirming a high probability of infringement of the 446 Patent. As such, Roku either knew or should have known about the existence of the 446 Patent and that creating features in its devices to practice that patent would induce infringement. Roku has induced and continue to induce end users of the 446 Patent

1   Accused Products to infringe at least claim 1 of the 446 Patent within the meaning of 35

2   U.S.C. § 271(b).

3       200.   Roku induces infringement by its customers and users by instructing an

4   encouraging them to download and use the Roku Mobile App.  Encouragement and

5   instructions to download the Roku Mobile App appear on the setup screen during the

6   setup of a Roku Device.   Encouragement and instructions to download the Roku Mobile

7   App appear on the setup screen during the setup of a Roku Device, and on the Roku

8   website at https://www.roku.com/mobile-app. For example, Roku provides step-by-step

9   instruction on how an end user should use these products in a manner that directly

10   infringes the 446 Patent, and Roku also provides further instruction in the "Setup and

11   Troubleshooting" section of its website. Roku further has a webpage

12   https://support.roku.com/article/217288467-how-to-install-the-roku-mobile-app

13   dedicated to instructing users how to set up Roku Mobile App and connect it to Roku

14   devices using the infringing process, explaining, "When the Roku mobile app launches it

15   will discover any Roku devices on your network. Select the Roku device you wish to

16   control using your Roku mobile app. You will then be taken to the home screen where

17   you will be able to control your Roku device." The Privacy Policy further indicates that

18   the data capture happens automatically by the Roku Mobile App after installation.

19       201.   Roku's direct and indirect infringement of the 446 Patent has injured UEI,

20   and UEI is entitled to recover damages adequate to compensate it for such infringement.

21       202.   Roku's infringement of the 446 Patent has been willful, wanton, malicious,

22   and/or deliberate and constitutes egregious behavior justifying an award of enhanced

23   damages.  More specifically, Roku knew or should have known about the 446 Patent and

24   its infringement of that patent, as discussed above, but continued to engage in the using,

25   making, offering to sell, and/or selling of the 446 Patent Accused Products despite an

26   objectively high likelihood that this conduct would infringe the 446 Patent.

27       203.   Roku's infringing activities will continue to injure UEI unless and until this

28   Court enters an injunction prohibiting further infringement and, specifically, enjoining

further direct and indirect infringement of the 446 Patent.  If Roku's conduct is not stopped, UEI will continue to suffer competitive harm, irreparable injury, and significant damages.  Because UEI has no adequate remedy at law, UEI seeks, in addition to damages, preliminary and permanent injunctive relief.  UEI competes to supply remote control technology to companies like Roku and will continue suffering irreparable harm absent injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff UEI respectfully requests relief and judgement against the Defendant, Roku, Inc., as follows:

1.    An entry of judgement in favor of UEI and against Roku;

2.    An award of damages adequate to compensate UEI for Roku's direct infringement and indirect infringement of U.S. Patent Nos. 7,589,642; 8,004,389; 9,911,325; 9,716,853; 7,782,309; 7,821,504; 7,821,505; 7,895,532; and 8,015,446;

3.    A preliminary and permanent injunction against Roku and its officers, directors, employees, agents, consultants, contractors, suppliers, distributors, and all others acting in concert or privity with Roku from further infringement of the Patents-in-Suit;

4.    If an injunction is denied, an award of an ongoing royalty;

5.    An award of treble damages to UEI as a result of Roku's willful infringement;

6.    An award of prejudgment interest;

7.    A finding that, with respect to Roku, this case is exceptional and awarding to UEI its reasonable costs and attorney fees under 35 U.S.C. § 285;

8.    All other costs and fees awardable by law; and

9.    Such other relief that the Court sees as just and proper.

## JURY DEMAND

10.   UEI hereby demands a jury trial on all causes of action, claims, and issues so triable as a matter of right.

Respectfully submitted this 5th day of September, 2018.

By: */s/ Ryan W. Koppelman*

Ryan W. Koppelman (SBN 290704)
Timothy R. Watson (SBN 293774)
**ALSTON & BIRD LLP**
1950 University Avenue, 5th Floor
East Palo Alto, CA 94303
Telephone:   (650) 838-2000
Facsimile:    (650) 838-2001
ryan.koppelman@alston.com
tim.watson@alston.com

Michael J. Newton (SBN 156225)
**ALSTON & BIRD LLP**
2828 North Harwood Street, 18th Floor
Dallas, Texas 75201
Telephone:   (214) 922-3400
Facsimile:    (214) 922-3899
mike.newton@alston.com

Evan W. Woolley (SBN 286385)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone:   (213) 576-1000
Facsimile:    (213) 576-1100
evan.woolley@alston.com

*Attorneys for Plaintiff*
*Universal Electronics Inc.*