1  Ryan W. Koppelman (SBN 290704)
2  Timothy R. Watson (SBN 293774)
   **ALSTON & BIRD LLP**
3  1950 University Avenue, 5th Floor
   East Palo Alto, CA 94303
4  Telephone:  (650) 838-2000
   Facsimile:   (650) 838-2001
5  ryan.koppelman@alston.com
6  tim.watson@alston.com

7  Evan W. Woolley (SBN 286385)
   **ALSTON & BIRD LLP**
8  333 South Hope Street, 16th Floor
   Los Angeles, CA 90071
9  Telephone:  (213) 576-1000
   Facsimile:   (213) 576-1100
10 evan.woolley@alston.com

   Michael J. Newton (SBN 156225)
   **ALSTON & BIRD LLP**
   2828 North Harwood Street, 18th Floor
   Dallas, Texas 75201
   Telephone:  (214) 922-3400
   Facsimile:   (214) 922-3899
   mike.newton@alston.com

11

12 *Attorneys for Plaintiff*
   *Universal Electronics Inc.*

13

14 **UNITED STATES DISTRICT COURT**
   **CENTRAL DISTRICT OF CALIFORNIA**

15

16 UNIVERSAL ELECTRONICS INC.,
   a Delaware Company,
17
                  Plaintiff,
18
         v.
19
20 ROKU, INC., a Delaware Company,

                  Defendant.
21

22

| | |
|---|---|
| **Case No. 8:18-cv-01580-JVS-ADS** | |
| **Honorable James V. Selna** | |
| | |
| **PLAINTIFF UNIVERSAL ELECTRONICS INC.'S OPPOSITION TO ROKU, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** | |

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

I.   Introduction ................................................................................. 1

II.  Legal Standards .......................................................................... 2

III. Argument .................................................................................... 3

A.   The Arling Patent is Valid Under Section 101. ........................................ 3

1.   Summary of the Arling Patent. ................................................. 3

2.   The Claims of the Arling Patent are Directed to a Specific Improvement in the Field of Electronics Control. ........................... 4

3.   The Claims of the Arling Patent Contain Inventive Concepts. ................................................................................ 6

B.   The Janik Patents are Valid Under Section 101 ........................................ 9

1.   Summary of the Janik Patents. ................................................. 9

2.   The Janik Patents Are Directed to Specific Improvements of Remote Control Devices. ............................................... 10

3.   The Janik Patents Recite Patent Eligible Inventive Concepts. ....... 12

a.   Roku's Request for Judicial Notice is Improper. ................ 12

b.   The Janik Patents Contain Inventive Concepts. ................. 14

C.   The Scott Patents are Valid Under Section 101 ....................................... 15

1.   Summary of the Scott Patents. ............................................... 16

2.   The 532 Patent is Directed to Improvements in Remote Controls that Automate Certain Responses to User Interaction. ...................................................................... 17

3.   The 532 Patent Contains Inventive Concepts. ............................. 18

4.   The 446 Patent is Directed to an Improvement in Debugging Remote Control Applications. ...................................... 20

i

|   |   | 5. | The 446 Patent's Claims Contain Inventive Concepts. | 21 |
|   | D. | | The FAC States a Claim for Willful Patent Infringement. | 22 |
| IV. | Conclusion | | | 24 |

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alice Corp. v. Pty. Ltd. v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014).............................................................*passim*

*BASCOM Global Internet Servs. v. AT&T Mobility LLC,*
    827 F.3d 1341 (Fed. Cir. 2016) ................................................ 8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................ 2

*Berkheimer v. HP Inc.,*
    881 F.3d 1360 (Fed. Cir. 2018) ................................... 2, 6, 7, 14

*Cahill v. Liberty Mut. Ins. Co.,*
    80 F.3d 336 (9th Cir. 1996) ..................................................... 2

*Capstan AG Sys. v. Raven Indus., Inc.,*
    228 F. Supp. 3d 1235, 1244 (D. Kan. 2017) .....................*passim*

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,*
    776 F.3d 1343 (Fed. Cir. 2014) ..............................................21

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.,*
    880 F.3d 1356 (Fed. Cir. 2018) ....................................... 11, 18

*Cortez v. CitiMortgage, Inc.,*
    Case No. CV 14-01720-RGK 2014 U.S. Dist. LEXIS 176180 (Dec. 11, 2014) .................................................................................14

*Dana Corp. v. Am. Axle & Mfg.,*
    279 F.3d 1372 (Fed. Cir. 2002) ........................................ 9, 15

*Data Engine Techs. LLC v. Google LLC,*
    906 F.3d 999 (Fed. Cir. 2018) ................................................11

*Elbit Sys. Land v. Hughes Network Sys., LLC*,
  2017 U.S. Dist. LEXIS 94495 (E.D. Tex. Jun. 20, 2017) (adopted by
  *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 2017 U.S.
  Dist. LEXIS 178887 (E.D. Tex. Jul. 31, 2017)).......................................................24

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ..........................................................................*passim*

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018) ..................................................................................8

*Glasswall Sols., Ltd. v. Clearswift Ltd.*,
  2018 WL 6720014 (Fed. Cir. Dec. 20, 2018)..............................................................7

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S.Ct. 1923 (2016)................................................................................................22

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015) ................................................................................12

*Kedkad v. Microsoft Corp.*,
  Case No. C13-0141 TEH, 2013 U.S. Dist. LEXIS 126346 (N.D. Cal.
  Sept. 3, 2013)............................................................................................................13

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ..................................................................................13

*Lee v. City of Los Angeles*,
  250 F.3d 668. (9th Cir. 2001) ...................................................................................13

*United States ex rel. Lee v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011) ....................................................................................14

*McRo, Inc. v. Bandai Namco Games America*,
  837 F.3d 1299 (Fed. Cir. 2016) .....................................................................4, 12, 13

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
  811 F.3d 1314 (Fed. Cir. 2016) ..................................................................................1

*Pareto v. F.D.I.C.*,
  139 F.3d 696 (9th Cir. 1998) ......................................................................................2

*Presqriber, LLC v. Advanced Data Sys. Corp.*,
  Case No. 6:14-CV-859, 2015 U.S. Dist. LEXIS 177436 (E.D. Tex.,
  June 29, 2015)...........................................................................................9, 15, 20, 22

iv

*Rapid Litigation Management Ltd. v. CellzDirect, Inc.*,
827 F.3d 1042 (Fed. Cir. 2016) ................................................................. 6

*Read Corp. v. Portec Inc.*,
970 F.2d 816 (Fed. Cir. 1992) ............................................................ 23, 24

*Thales Visionix Inc. v. U.S.*,
850 F.3d 1343 (Fed. Cir. 2017) ............................................................. 4, 6

*TLI Communs. LLC v. AV Auto., L.L.C.*,
823 F.3d 607 (Fed. Cir. 2016) .................................................................. 12

*Trading Techs. Int'l v. CQG, Inc.*,
Case No. 05-cv-4811, 2015 U.S. Dist. LEXIS 22039 (N.D. Ill., Feb.
24, 2015) (aff'd by *Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 Fed.
Appx. 1001, 1004 (Fed. Cir. 2017)) ............................................. 17, 18, 19

*Uniloc USA, Inc. v. HTC Am., Inc.*,
Case No. C17-1558JLR, 2018 U.S. Dist. LEXIS 100737 (W.D. Wash.
June 14, 2018) ........................................................................................ 18

*Vaporstream, Inc. v. Snap Inc.*,
2018 U.S. Dist. LEXIS 32884 (C.D. Cal. Feb. 27, 2018) ......................... 8

*WBIP, LLC v. Kohler Co.*,
829 F.3d 1317 (Fed. Cir. 2016) ............................................................... 24

**Statutes**

35 U.S.C. § 101 ..................................................................................... *passim*

**Other Authorities**

Rule 12(b)(6)..................................................................................... 2, 13

## I.    Introduction

Roku's Motion to Dismiss is a contrived attempt to test the validity of some of the asserted patents and to avoid responsibility for Roku's egregious copying of UEI technology. All of Roku's challenges fail on the law, on the facts, and on proper procedure. The Motion should be denied in its entirety.

*First*, the asserted claims of the six challenged patents satisfy both steps of the *Alice* test. For step one of the test, the claims are not directed to abstract ideas. They permissibly claim technical improvements in specific fields. Roku mischaracterizes the claims in abstract manner to argue they are abstract. Courts routinely reject this specious tactic, and this Court should as well. For step two, the claims contain limitations that, alone or in combination, represent inventive concepts, as is permitted for patenting. Under both steps, the validity of the claims is supported by factual assertions in the First Amended Complaint ("FAC"), which the Court must currently accept as true but that Roku either ignores or improperly attempts to dispute. To refute such factual allegations, Roku must offer clear and convincing evidence, a high standard that Roku has not met, nor even argued that it has met, further precluding a finding of patent ineligibility at this stage of the case.

In regards to willfulness, UEI has alleged with specific factual details that Roku willfully infringed each of the asserted patents by copying UEI's technology that embodies the asserted patents, conduct that the law has long recognized as a basis for willful patent infringement. As UEI alleges, Roku had significant access to UEI's technical documents and UEI products themselves. Then, Roku copied UEI's patented features into its own products without UEI's consent. These allegations are sufficient to pursue willful patent infringement claims here. Roku strains to challenge the allegations by claiming that they are not plausible despite the allegations containing significant factual detail. The Court should reject Roku's arguments.

For at least these reasons, and as discussed in more detail below, Roku's Motion should be denied in its entirety.

## II.    Legal Standards

Dismissal for failure to state a claim is improper if the plaintiff alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   On a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party.   *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  "A complaint should not be dismissed unless a plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id.*   The court must also accept as true all reasonable inferences from the material allegations in the complaint.  *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

Patent eligibility under 35 U.S.C. § 101 is an issue of law that may contain underlying issues of fact.  *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) (citing *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016)).   The Supreme Court provides a two-part test for assessing patent eligibility.   *Alice Corp. v. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). First, courts ask whether the claims are directed to a patent-ineligible concept.  *Id.* at 2355.  If not, the inventions are patent eligible and the inquiry ends.  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016).  If they are directed to a patent-ineligible concept, the court must "consider the elements of each claim both individual and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application."  *Alice*, 134 S. Ct. at 2355.  Claims are not ineligible under step two if they contain limitations that "involve more than performance of well-understood, routine, and conventional activities previously known to the industry."  *Berkheimer*, 881 F.3d at 1367. "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that must be proven by clear and convincing evidence.  *Id.* at 1368 (citing *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011)).

III.   **Argument**

    **A.   The Arling Patent is Valid Under Section 101.**

    The claims of U.S. 9,716,853 ("the Arling Patent") are patent eligible under both prongs of the *Alice* test. They are directed to a technological improvement in the field of appliance control and contain limitations that alone and in combination were not well-understood, routine, or conventional.  This section summarizes aspects of the Arling Patent and explains how the claims satisfy the *Alice* test. For the reasons stated below, the Court should deny Roku's Motion with respect to the Arling Patent.

            **1.   Summary of the Arling Patent.**

    The Arling Patent, titled "System and Method for Optimized Appliance Control," is directed to a specific problem in the field of electronic devices or appliances, specifically the need for a single device capable of controlling multiple functional operations of appliances that use differing communication means.  At the time of the patent, the development of new communication methods created a problem where multiple devices in the same room required different communication methods, thus requiring the use of multiple control devices.  (D.I. 28 at ¶ 91).  The Arling Patent notes "the recent proliferation of wireless and wired communication and/or digital interconnection methods such as WiFi, Bluetooth, HDMI, etc., amongst and between appliances [resulted] in a corresponding proliferation of such communication protocols and command formats."  (D.I. 28-4 at 1:45-50).  Despite these advances in device control technology, "many manufacturers were slow to adopt newer methods, resulting in situations where multiple devices in the same room or network could only be operated via different communication methods.  (D.I. 28 at ¶ 91).

    To solve this problem, the Arling Patent discloses and claims a device "for taking advantage of improved appliance control communication methods" in a way that is "seamlessly integrated with legacy application control technology."  (D.I. 28-4 at 1:63–2:3).  The invention involves "a modular hardware and software solution" called a "Universal Control Engine (UCE)."  The UCE's features include: (i) being

adapted "to provide device control across a variety of available control methodologies" such as "infrared (IR) remote control protocols" and "Consumer Electronic Control (CEC) [] over a wired HDMI connection" and (ii) being "adapted to combine various control methods in order to realize the best control option for each individual command for each individual device." (*Id.* at 2:4-20). These features, which are specific to the field of appliance control, are reflected in the asserted claims. An example of the invention is that the UCE "may utilize IR commands to power on an AV receiver appliance while CEC commands or another method may be used to select inputs or power down the same AV receiver appliance; or CEC commands may be used to power on and select inputs on a TV appliance while IR commands may be used to control the volume on the same TV appliance." (D.I. 28-4 at 2:39-45). Based on at least the above facts, which are not subject to dispute at this stage of the proceedings, the Arling Patent is patent eligible under both prongs of the *Alice* test— its claims are directed to a technological improvement in appliance control and contain limitations that alone and in combination were inventive.

### 2. The Claims of the Arling Patent are Directed to a Specific Improvement in the Field of Electronics Control.

The claims of the Arling Patent are valid under *Alice* step one, as they are directed to specific improvements in technology, rather than abstract ideas. *Enfish*, 822 F.3d at 1335-36 (holding that claims that focus on a specific asserted improvement in computer capabilities are patent eligible); *McRo, Inc. v. Bandai Namco Games America*, 837 F.3d 1299, 1316 (Fed. Cir. 2016) (holding claims directed to a specific process for automatically animating characters using particular information patentable as an improved technological result); *Thales Visionix Inc. v. U.S.*, 850 F.3d 1343, 1348-49 (Fed. Cir. 2017) (finding claims directed to systems and method using inertial sensors in a non-conventional manner to solve existing problems were not abstract). Similar to *Enfish*, *McRo*, and *Thales Visionix*, the claims of the Arling Patent are directed to a specific improvement to existing technology. The claimed invention solves the problem of controlling functional operations of multiple

4

appliances that use different communication methods by having a central UCE that detects and uses identities of connected appliances to create a listing of at least two communication methods for controlling at least two functional operations of that appliance and selects the communication methods to be used for each functional operation.  The claims represent an improvement in the field of universal remote controls, as they eliminate the need for multiple remotes to control devices that use different communications protocols or for all devices to use the same protocol creating a UCE that can control multiple appliances and select the best method for controlling multiple functions of each.  (D.I. 28 at ¶¶ 91-92).  Thus, the invention improves the way that connected appliances may be controlled by a specific applicant, and the claims are thus patent-eligible. *See Enfish*, 822 F.3d at 1335-36.

Roku asserts that the claims are directed to "the abstract idea of choosing one of a number of communications paths over which to send a message" and analogizes this to the Postal Service determining paths to send letters.  (D.I. 32 at 7).  The Federal Circuit warned against this type of argument, admonishing reading the claims at such a high level of abstraction and untethered form the language of the claims that would allow exceptions to Section 101 to swallow the rule.  *See, e.g.*, *Enfish*, 822 F.3d at 1337. Roku's example of routing mail via truck, railroad, or ship has little, if anything, to do with the claims of the Arling Patent. In particular, claim 1 does not merely relate to delivering information. The claim itself, and the entire patent, show that the invention is directed to a control. The limitations of claim 1 reflect this throughout, including the preamble ("A universal control engine, comprising") and limitations requiring the UCE "to respond to a detected presence of an intended *target appliance* within a logical topography of *controllable appliances*" and to "respond to a received request from a *controlling device* intended to cause the intended *target appliance to perform* a one of the first and second *functional operations*."

Further, the claims do not generally involve communication methods, but they involve at least a first and second communication method "for use in *controlling each*

*of* at least a first functional operation and a second functional operation of the intended *target appliance*." (D.I. 28-4 at 13:59-64). A postal worker does not select a method for controlling an appliance, let alone selecting a first and second method for controlling a first and second functional operation of that appliance. Roku's attempt to characterize the claims as being directed merely to selecting communication protocols—without acknowledging the important limitations relating to appliance control—is thus improper. *Rapid Litigation Management Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016) ("[I]t is not enough to merely identify a patent-ineligible concept underlying the claim; we must determine whether that patent-ineligible concept is what the claim is 'directed to.'"); *Thales Visionix*, 850 F.3d at 1349. The Court should therefore deny Roku's Motion with respect to the Arling Patent, find that the claims are valid and not directed to an abstract idea.

### 3.     The Claims of the Arling Patent Contain Inventive Concepts.

While the Court does not need to consider step two if it finds the claims are not directed to an abstract idea, the claims of the Arling Patent are nonetheless valid under *Alice* step two. As noted above, a claim satisfies step two if its limitations "involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Berkheimer*, 881 F.3d at 1367. The claims contain limitations that are not routine, conventional, or well-understood when read individually or in combination. Roku does not submit clear and convincing evidence to the contrary and has not met its burden of showing the claims should be dismissed. The Court should deny Roku's Motion on the Arling Patent under *Alice* step two.

Claim 1's limitation of "using an identity associated with the intended target appliance to create a listing comprised of at least a first communication method and a second communication method different than the first communication method for use in controlling each of at least a first functional operation and a second functional operation of the intended target appliance" was not well-understood, routine or conventional at the time of invention. (D.I. 28 at ¶ 92). Prior art to the Arling Patent

6

did not disclose this limitation, a fact recognized by the USPTO Examiner during prosecution. (*Id.*). Roku's Motion acknowledges that the FAC contains these specific allegations. (D.I. 32 at 8 (citing D.I. 28 at ¶ 92)). These allegations must be taken as true, with all inferences drawn in UEI's favor. This should end the inquiry. Because Roku does not submit clear and convincing evidence to the contrary, or even argue that it can meet this high evidentiary standard, its motion fails and should be denied. *Berkheimer*, 881 F.3d at 1368.

Further, Roku's specific arguments do not establish that the Arling Patent fails to satisfy *Alice* step two. Roku again argues by analogy, stating that "the Post Office would necessarily have to know whether a particular route or method was available to send a package and update its information when a particular route or method became available or unavailable (e.g., when a train route becomes unavailable because a rock slide covers the tracks)." (D.I. 32 at 8). Once again, the claims of the Arling Patent are directed to creating a listing of at least a first and second communication method for *controlling* appliances and using such methods to control at least a first and second functional operation of such appliance. Roku's analogy merely relates to communication *transmissions*. It has nothing to do with using multiple communication methods to control multiple functions of an appliance. The Post Office does not control any appliances with its letter routing.

Roku's cited authority is likewise inapposite. In *Glasswall Sols., Ltd. v. Clearswift Ltd.*, 2018 WL 6720014, at *1-2 (Fed. Cir. Dec. 20, 2018) (nonprecedential), the claims were found to recite only "generic computer functions" and "conventional manipulation of information by a computer." Here, Roku has simply not shown by clear and convincing evidence that the limitation "using an identity associated with the intended target appliance to create a listing" was conventional as opposed to a new, improved function that devices could not previously do. Similarly, in *BSG Tech v. BuySeasons, Inc.*, the claims were found to not include improvements in how databases functioned. 899 F.3d 1281, 1288 (Fed.

Cir. 2018).  The Arling Patent claims, in contrast, do in fact claim an improved way that appliance control functions, including the UCE that uses an improved way of storing and organizing information related to connected appliances.  In *Apple, Inc. v. Ameranth, Inc.*, the Federal Circuit found that certain claims covered existing restaurant processes when done by a computer.  849 F.3d 1229, 1244 (Fed. Cir. 2016).  Here, the claimed UCE provides a technical improvement in appliance control, not merely a pre-existing process implemented by a computer.

Further, even assuming Roku were correct that the Arling Patent uses only conventional elements, a "non-conventional and non-generic arrangement of known, conventional pieces" may still be an inventive concept that satisfies *Alice* step two.  *BASCOM Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (holding that the claimed manner of performing content filtering on the internet at "a specific location, remote from the end-users, with customizable filtering features specific to each end user" was an inventive concept); *Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299, 1305-06 (Fed. Cir. 2018) (holding software-based innovation in virus scanning was patent eligible).  Here, the claims of the Arling Patent use appliance identity information in a novel way—to develop, by a UCE, a listing of first and second communication methods for controlling first and second functional operations of that appliance and using one of such communication methods to control the first and second functional operations.  (D.I. 28 at ¶ 92).  Again, Roku does not submit clear and convincing evidence that claim 1, when read as a whole, was well-understood, routine, or conventional.  Indeed, courts in this district have recognized that even in the presence of expert testimony, an issue of fact may exist preventing summary judgment on invalidity under Section 101.  *See, e.g.*, *Vaporstream, Inc. v. Snap Inc.*, 2018 U.S. Dist. LEXIS 32884, at *14-16 (C.D. Cal. Feb. 27, 2018).  For this additional reason, Roku's Motion should be denied.

Similarly, the dependent claims add limitations that further provide inventive concepts to the specific application of the UCE. Claim 2 requires that "the instructions

cause the universal control engine to respond to the request by causing a highest prioritized one of the first and second communication methods…to be used to transmit…a command." Claim 3 requires that "the instruction cause the universal control engine to initiate a detection of the presence of the intended target appliance within the logical topography of controllable appliances." Claim 6 requires that the instructions "cause the universal control engine to use at least one characteristic associated with each of the plurality of communication methods in the listing to prioritize the first and second communication methods in the listing." Roku has not established by clear and convincing evidence that these additional limitations— individually or in combination—were routine, well-understood, or conventional in the field of appliance control. *See Presqriber, LLC v. Advanced Data Sys. Corp.*, Case No. 6:14-CV-859, 2015 U.S. Dist. LEXIS 177436, *16 (E.D. Tex., June 29, 2015) (denying motion to dismiss in part because alleged inventive concepts were not "facially recognizable as well-understood, routine, conventional" and the Court had to accept the allegations as true). Each claim of a patent is presumed valid "independent of the validity of the validity of other claims" and "an independent evaluation is necessary … because dependent claims necessarily add limitations to the claims from which they depend and may therefore not be subject to the same asserted grounds of invalidity." *Dana Corp. v. Am. Axle & Mfg.*, 279 F.3d 1372, 1376 (Fed. Cir. 2002). The Court should thus deny Roku's Motion with respect to the Arling Patent.

## B.    The Janik Patents are Valid Under Section 101.

The claims of the Janik Patents are patent-eligible under both prongs of the *Alice* test. They are directed to specific problems in the field of remote control devices, specifically the challenge of adding functionality to a remote control device equipped with a touchscreen. They contain limitations that were not well-understood, routine, or conventional, such as touchscreens, multiple operational modes, and multiple inputs. The Court should therefore deny Roku's Motion on the Janik Patents.

### 1.    Summary of the Janik Patents.

9

The Janik Patents are all titled "Controlling Device with Dual-Mode, Touch Sensitive Display." At the time of the patents remote control devices were generally limited to one mode of user interaction like pressing a button or soft key. (D.I. 28, ¶¶ 110, 133, 155; D.I. 28-7, 1:60–2:8 (describing prior art remote controls that only recognized tapping input)). Such input was useful for making menu selections, but did not allow for cursor control functionality on a remote appliance. (*Id*.); (D.I. 28, ¶ 155).

The inventions of the Janik patents focus on a remote control device, the software therein, and methods of use that enable a touchscreen remote control to accept and react to two different types of input—tapping and swiping. An example of the claimed invention is "when operating within the first operational mode, when the user activates a mechanical button or soft button, a command code specific to an operational function on a specific target device is typically sent to target device" to, for example, "navigate through selections and menus displayed on the TV." Then, a button press or input from "feedback components" allow the controlling device to be "toggled between the first operational mode and the second operational . . . mode." Where, for example, the target appliance "may thus use the data provided by the touch-sensitive digitizing sub-system of the universal controlling device 100 identically to data received from a USB mouse, e.g., to control movement of a displayed pointer." (D.I. 28-7 at 5:17-60). Thus, the Janik Patents are patent-eligible under both steps of the *Alice* test because they are directed to a solution (a process of recognizing input, transmitting data, and distinguishing touchscreen input) to a problem (limited functionality) in the field of remote controls and contain limitations that, alone and in combination, were not well-understood, routine, or conventional.

### 2.   The Janik Patents Are Directed to Specific Improvements of Remote Control Devices.

The claims of the Janik Patents are valid under *Alice* step one, as they are not directed to abstract ideas. Rather, they are directed to a specific solution to a problem—touchscreen remote devices that could only recognize one type of tapping

input—by using specific inputs with specific process steps for specific functions to achieve a result that improves remote control functionality. This kind of technological improvement is patent eligible. *See Enfish*, 822 F.3d at 1335-36.

For example, in *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008-09 (Fed. Cir. 2018), claims covering a tabbed GUI for spreadsheets were not directed to an abstract idea because they related to a "specific method" of navigating spreadsheets involving "specific steps" and a "specific interface"—not merely the "idea of navigating through spreadsheet pages using buttons or a generic method of labeling and organizing spreadsheets." *See also Capstan AG Sys. v. Raven Indus., Inc.*, 228 F. Supp. 3d 1235, 1244 (D. Kan. 2017) (claims for algorithm using specific inputs in specific formula for specific purpose of individual valve control were not directed to abstract idea); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018) (claims reciting a specific improvement resulting in an improved user interface were directed to an improvement in the functioning of computers). Just as in *Data Engine*, the Janik Patents involve specific steps: accepting a first type of tapping input, transmitting the data associated with that input to a remote appliance, accepting a second type of swiping input, distinguishing between two types of touchscreen input, and transmitting the data associated with the second input to a remote device to perform a different function than the first input such as cursor functionality. The claims "set out to solve a problem that itself is patent-eligible"—adding functionality to distinguish between tapping and swiping inputs on touch screen remotes so as to perform certain control functions—and are thus patent eligible. *Capstan*, 228 F. Supp. 3d at 1244.

Roku's characterization of the Janik Patents—that they are merely directed to "the abstract idea of recognizing or distinguishing among different types of inputs" (D.I. 32 at 11:16-17) runs afoul of the Federal Circuit's admonition that "we must be careful to avoid oversimplifying the claims because at some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or

abstract ideas." *TLI Communs. LLC v. AV Auto., L.L.C.*, 823 F.3d 607, 611 (Fed. Cir. 2016). The Janik Patents do not preempt all applications of distinguishing between different types of inputs—just as with the Arling Patent, Roku ignores the limitations of claim 1. The Janik Patents are about a specific device (a remote control), receiving specific types of inputs (tapping and swiping on a touchscreen), processing those inputs in a specific way (distinguishing between taps and swipes), and doing specific things with those inputs (transmitting data from the inputs to a remote appliance to perform different functions such as media selection or cursor control). The claims of the Janik Patents do not cover a "fundamental . . . practice long prevalent in our system." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015). The Janik Patents cover a specific technological improvement to a specific technological device and are directed to patent-eligible subject matter. *Enfish*, 822 F.3d at 1335-36; *McRo*, 837 F.3d at 1316.

### 3. The Janik Patents Recite Patent Eligible Inventive Concepts.

Roku's argument on step two of the *Alice* test for the Janik Patents suffers from three fatal flaws. The first flaw is that Roku's argument is premised entirely on a defective Request for Judicial Notice ("RJN") and failed arguments about the scope of the prior art based on the evidence sought to be introduced by the RJN. The second flaw is that Roku ignores UEI's factual allegations showing that the use of touchscreens in remotes and distinguishing between tapping and swiping inputs were not routine or conventional. The final flaw is that Roku seeks to invalidate 154 claims of three patents with the naked assertion that the single claim it analyzes is representative, while a glimpse at UEI's other asserted claims reveals this as false.

### a. Roku's Request for Judicial Notice is Improper.

The entirety of Roku's argument that the elements of claim 1 of the 505 patent are routine and conventional is based on an RJN seeking notice of a patent application publication, Pub. No. US 2003/0103088 (the "088 Application"). Roku asserts that the 088 Application, mentioned in passing in the Janik patent specifications,

12

constitutes an admission as to the scope of the prior art showing that features like remote touchscreens and GUIs were routine and conventional. (D.I. 32, 13-15). Roku asserts that the 088 Application is a public record incorporated by reference into the Janik Patents that is thus judicially noticeable. (*Id.*) As described more fully in the concurrently filed objections, Roku's RJN is defective for several reasons.

First, the 088 Application is not actually incorporated by reference. Generally "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688. (9th Cir. 2001). Incorporation by reference allows the Court to consider documents outside of the complaint, but only where the "contents are alleged in a complaint and whose authenticity no party questions." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The 088 Application is not mentioned in the FAC at all. Instead, Roku relies on a daisy chain of incorporation by reference—Roku asserts that the 088 Application is incorporated into the Janik Patents, which are then incorporated in the FAC. A chain of such incorporations is not allowed. *See Kedkad v. Microsoft Corp.*, Case No. C13-0141 TEH, 2013 U.S. Dist. LEXIS 126346, *20 (N.D. Cal. Sept. 3, 2013).

Second, Roku's RJN is also improper for asking the Court to take judicial notice of disputed facts. Roku requests judicial notice of the "fact" that remote control devices with touchscreens, GUIs, and motion inputs were routine and conventional at the time of the patent. (D.I. 32 at 15:1-11.) But this alleged "fact" is merely Roku's interpretation of the 088 Application's description of local control on a PDA device. UEI's FAC alleges that touchscreens were not routine and conventional with remote controls because "touchscreen technology comprised a small part of the market, was generally expensive, and was difficult to incorporate into a consumer device." (D.I. 28 at 30:8-10.) Moreover, "[t]o the extent touchscreen technology was used, it replicated functionality of hard keys, as opposed to allowing multiple methods of control." (*Id.* at 30:10-11). The Court cannot take judicial notice of the disputed fact as to whether remote control devices with touchscreens, GUIs, and the ability to

distinguish between two types of touch input were routine and conventional in the art. *See United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) ("Here, we can consider the *existence* of the reports . . . . Nonetheless, we may not, on the basis of these reports, draw inferences or take notice of facts that might reasonably be disputed.") (emphasis in original); *see also Cortez v. CitiMortgage, Inc*., Case No. CV 14-01720-RGK (SPx) 2014 U.S. Dist. LEXIS 176180, *9 (Dec. 11, 2014) ("Even if the Court could take judicial notice of the documents themselves, it could not take notice of the truth of the facts asserted within the documents.").

Even if judicial notice were taken of the 088 Application, and even if notice were taken of the alleged "fact" Roku cites therein, it would still not support Roku's argument that the Janik Patents lack inventive concepts. Roku asserts that the 088 Application shows that remote control devices using touchscreens and GUIs were routine and conventional in the art. But Roku cannot meet its burden of proof by clear and convincing evidence with a single reference. *See Berkheimer*, 881 F.3d at 1369 ("The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional."). Thus, Roku fails to carry its burden, and its Motion must be denied.

### b.   The Janik Patents Contain Inventive Concepts.

UEI's FAC contains factual allegations establishing that the elements of the Janik Patents are not routine or conventional. Touchscreens themselves were expensive and uncommon in remote controls. (D.I. 28, ¶ 111). To the extent that touchscreens were used, they contained only the tapping functionality reminiscent of traditional hard key remotes. (*Id*.). Roku's alleged identification of a single prior art device using a touchscreen (the iPAQ, for local control) does not mean that touchscreens were conventional in connection with remote controls. *Berkheimer*, 881 F.3d at 1369; *Capstan*, 228 F. Supp. 3d at 1247 (mere identification of individually controlled valves in prior art did not mean they were conventional). This falls far short of clear and convincing evidence of invalidity. *Berkheimer*, 881 F.3d at 1368. In

light of UEI's factual allegations and the standard on a motion to dismiss requiring acceptance of UEI's allegations as true, the Janik Patents contain an inventive concept and are patent eligible.  *See Presqriber*, 2015 U.S. Dist. LEXIS 177436, *16.

Roku's Motion also fails for another reason—it discusses one claim of one patent and asks the court to invalidate 154 claims (five of them independent, and 64 of them asserted against Roku) of three patents spanning method, apparatus, and computer readable medium claims. Roku's naked assertion that "[a]ll of the Janik Patents' independent claims are substantially the same" is insufficient. (D.I. 32 at 10:22). As discussed above, each patent claim is presumed valid independent of the other claims. *Dana Corp.*, 279 F.3d at 1376.  Here, even a quick glance at the various claims disproves Roku's assertion of representativeness. Independent claim 5 of the 505 Patent is drawn to "non-transitory computer readable media" and not a method like claim 1 of the 505 Patent. (D.I. 28-7 at 7:51). Claim 10 of the 505 Patent adds the element of having the second data control movement of a cursor. (*Id*. at 8:43-46). Claim 17 adds that the universal controlling device contains a WLAN transceiver. (*Id*. at Reexamination Certificate ("C1") 1:38-40). Claim 19 adds a speaker to the universal controlling device for playing audio in response to input to the device. (*Id*. at C1 1:46-49). Claim 2 of the 504 Patent adds the element that the universal controlling device supports two different "operational modes" to distinguish between the input types. (D.I. 28-6 at 7:1-36). Claim 7 provides that the data are transmitted from the universal controlling device using an RF protocol. (*Id*. at 8:4-6).  Claim 20 adds the element of causing the universal controlling device to perform an operation in response to a sound input. (*Id*. at C1 1:56-58). Roku provides no argument or analysis as to why any of these additional elements are routine or conventional. With both the presumption of validity and all inferences currently in UEI's favor, these claims cannot be wantonly invalidated on a motion to dismiss after no showing by Roku. *See Presqriber*, 2015 U.S. Dist. LEXIS 177436 at *15-16.

**C.     The Scott Patents are Valid Under Section 101.**

The 532 Patent and the 446 Patent (collectively the "Scott Patents") are patent eligible under both prongs of the *Alice* test. The Scott Patents are directed to specific problems in the field of remote control devices. The 532 patent solves the problem of having a large number of user interactions with a GUI on a remote control and a correspondingly large number of soft-key buttons on the GUI by automating the processes for controlling a multitude of devices. The 446 patent provides a method for capturing, storing, and transmitting specific data for debugging remote control applications. The Scott Patents also contain limitations that alone and in combination were not well-understood, routine, or conventional, such as automatically created sequences of instructions, and specific data captured in a specific way that is tied to remote control applications. For these reasons, the Court should deny Roku's Motion with respect to the Scott Patents.

### 1.    Summary of the Scott Patents.

The Scott Patents are both entitled "User Interface for a Remote Control Application."  At the time of the 532 Patent, prior art universal remote controls relied on numerous hard keys for control, such that the control interface became more crowded and less user friendly on remotes able to control a greater number of appliances (D.I. 28-8 at 1:18-36).  The invention of the 532 Patent is a simplified user interface, where an automatically created sequence of instructions performs interactions with controllable devices without requiring user input (and additional keys) at every step of the way.

At the time of the 446 Patent prior art universal remote control applications were not able to be properly debugged after the initial sale to consumers, leading to problems in the field that could not be corrected.  (D.I. 28, ¶ 196).  The invention of the 446 Patent is a method of debugging a remote control application that stores specific data (user interaction data), captured at a specific time (during device operation), in a specific way (on the controlling device), and processing that data in a specific way (uploading for debugging).  (D.I. 28-9 at 38:43-57).

### 2. The 532 Patent is Directed to Improvements in Remote Controls that Automate Certain Responses to User Interaction.

The claims of the 532 Patent are valid under *Alice* step one as they are not directed to an abstract idea. The 532 Patent claims a specific solution to the problem of a cluttered remote control GUI requiring a multitude of keys to control a multitude of functions of a multitude of devices. This solution is a specifically structured user interface paired with a specific functionality related to that structure—a patent-eligible technological improvement and not an unpatentable abstract idea. *See Trading Techs. Int'l v. CQG, Inc.*, Case No. 05-cv-4811, 2015 U.S. Dist. LEXIS 22039, *11-*12 (N.D. Ill., Feb. 24, 2015) (aff'd by *Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 Fed. Appx. 1001, 1004 (Fed. Cir. 2017)). In *Trading Techs.*, the court held patent-eligible claims relating to a user interface that displayed certain securities trading information. The claims solved a problem with prior art GUIs (not updating certain trading information with the fast-paced market) with a method that displayed specific types of information and allowed a user to set certain parameters to place an order. *Id.*

As in *Trading Techs.*, the 532 patent solves a prior art problem GUIs–cluttered interfaces because each function and each appliance required their own keys—with a uniquely structured interface. The solution takes the form of a method involving (1) a GUI icon representing a controllable appliance; (2) using an automatically created series of instructions reflecting a user interaction with the icon; and (3) executing those instructions in response to the user interaction with the icon. (D.I. 28-8 at 39:10-26). For example, in a device setup operational mode, the assigned functionality of GUI icons and soft keys may relate to "[d]evices... that are not yet setup." (*Id.* at 12:51-64). When a user selects a device, setup is "automatically initiated" to "establish a starting configuration for the remote control application." (*Id.* at 12:65–13:7). By automatically setting functionality for keys based on the operational mode, and by automatically performing processes like setup, the invention of the 532 patent reduces the number of keys and user interactions required for remote control operation. This is a concrete technological improvement to remote control interfaces

and patent-eligible. *See Trading Techs.*, 2015 U.S. Dist. LEXIS 22039 at *12.

Roku's characterization of the 532 Patent as directed to "representing computer operations with a user interface element" (D.I. 32 at 16:14) is another gross oversimplification—precisely what the court faulted the defendant for in *Trading Techs*. *See Trading Techs.*, 2015 U.S. Dist. LEXIS 22039 at *11 ("CQG ignores much of the details of the representative claims" such as the specific types of information to display). Just as in *Trading Techs.*, Roku ignores the limitations of the 532 Patent, which is more specific and concrete than the general idea of representing any sort of computer operation with a GUI icon. The 532 patent is about automating certain processes to lessen the required number of keys and user interactions on a remote control. This is a far cry from the unpatentable concept in *Uniloc USA, Inc. v. HTC Am., Inc.*, Case No. C17-1558JLR, 2018 U.S. Dist. LEXIS 100737, *16 (W.D. Wash. June 14, 2018), where the patent covered only the result of "wirelessly controlling remote devices" and not a specific means of doing so.

The 532 Patent does not claim a mere result (and it doesn't claim the all-encompassing result of representing computer operations with GUI icons)—it claims a specific means for reducing the number of keys and user interactions required for remote control GUIs by using certain types of icons (representing appliances) and automatically created sequences of instructions doing certain things (reflecting user interactions). (D.I. 28-8 at 39:42–40:10). Claims directed to specific, improved GUIs are patent-eligible. *See, e.g.*, *Core Wireless*, 880 F.3d at 1363. The 532 Patent claims a patent-eligible improvement in the set-up process of remote control devices.

### 3.    The 532 Patent Contains Inventive Concepts.

Even if the 532 Patent claims did not pass *Alice* step one, they would be valid under *Alice* step two because they contain inventive concepts. Exemplary claim 10 requires a specific type of GUI icons performing specific functions to automate certain controls and reduce the required number of icons and user interactions. This concrete way to improve a technological process is an inventive concept. *See Trading Techs.*,

2015 U.S. Dist. LEXIS 22039 at *16 (a "static price axis" was an inventive concept because it was a specific type of data that helped solve a problem in the prior art).

Roku asserts that the prior art as described in the specification contain elements like GUIs, remote control applications, and responses to user inputs, so none of those elements are inventive concepts. (D.I. 32 at 17:25-20:19). Setting aside the illogic of the Patent Office issuing a patent where the specification, according to Roku, demonstrates every element to be present in the prior art, Roku's argument crumbles because it does not accurately describe the patent claims. Exemplary of Roku's mischaracterization is the assertion that the 532 Patent's claims are no different from a user clicking the save icon in a word processing program to save a document.  (D.I. 32 at 19:17-20:10). But, the 532 Patent does not merely claim execution of instructions (like saving a document) upon interaction with a GUI icon. The 532 Patent claims a specific type of GUI icon which represents a controllable external device, not a local feature like saving. It also claims a specific type of automatically created instructions, including a sequence of instructions that performs multiple steps without user interaction, which is unlike the save icon click that performs one step (saving to memory) with little more requiring automation. Regardless, Roku does not identify either of these elements in the prior art or explain how they are routine or conventional. These specific elements "eliminated some problems of prior art GUIs" by reducing the number of required buttons and user interactions, so they are inventive concepts.  *Trading Techs.*, 2015 U.S. Dist. LEXIS 22039 at *16. In light of UEI's factual allegations of inventiveness (D.I. 28 at ¶ 179), the presumption of patent validity, and the standard on a motion to dismiss requiring the Court to accept UEI's well-pleaded factual allegations as true, Roku's motion fails.

Roku also fails to explain how the one claim it analyzes is representative of all UEI's asserted claims.  Claim 11 adds the inventive concept that the programming for creating the sequence of instructions is resident on the controlling device.  (D.I. 28-8 at 40:11-14).  This is unconventional in light of the fact that at the time of the patents,

remote control devices were generally dumb devices containing minimal software. Claim 12 adds the inventive concept that the sequence of instructions transmit a command to the appliance to place it into a desired state of operation.  (D.I. 28-8 at 40:16-26).  Roku's examples of local operations (like saving documents) do nothing to show how automatically changing the operational state of a remote appliance (like from disconnected to connected, or into playback mode, or on or off) was conventional. Once again, these elements are not "facially recognizable" as conventional, so Roku fails to carry its burden to demonstrate their invalidity on its motion to dismiss. *See Presqriber*, 2015 U.S. Dist. LEXIS 177436 at *16.

### 4. The 446 Patent is Directed to an Improvement in Debugging Remote Control Applications.

The claims of the 446 Patent are valid under *Alice* step one as they are not directed to an abstract idea. The 446 Patent claims a specific solution to the problem of improving remote control application performance through debugging by using specific data in a specific way for a specific purpose—a patent-patent eligible technological improvement and not an abstract idea.  *See Capstan*, 228 F. Supp. 3d at 1244.  In *Capstan*, the court held that claims relating to a system for individual control of agricultural spraying valves was patent eligible. *Id*.  The core of the patent claims was a method that took specific data (values associated with spray flow like the speed, position, and vehicle effects), captured in a specific way (through user input), for a specific purpose (calculating optimal flow through each valve).  *Id*. at 1242.  The debugging solution of the 446 patent is a method involving (1) capturing data during operation of the controlling device; (2) that's representative of user interactions with the controlling device and actions occurring thereby; (3) storing the captured data on the controlling device; (4) causing the controlling device to upload the data to a computer; (5) such that the data is available for debugging. (D.I. 28-9 at 38:43-57). For example, the remote control application may capture data associated with recently viewed channels to create and update a favorites list. (*Id*. at 6:25-35). As in *Capstan*,

UEI'S OPPOSITION TO ROKU'S MOTION TO DISMISS

this is a method using specific data captured in a specific way for a specific purpose that improves technological performance. *See Capstan*, 228 F. Supp. 3d at 1244

Roku's characterization of the 446 Patent as directed to "saving information to a remote location" is another improper oversimplification. (D.I. 32 at 21:9-10). The 446 patent does not lay claim to saving any type of information to any type of remote location. The 446 Patent provides a concrete, step-by-step process for gathering a specific type of data, storing it in a specific way, and making it available in a specific way for a specific purpose, all on a remote control application. This is far afield of the invalid data collection patent in *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014), which broadly related to storing all data from any document in a computer. The 446 Patent, in contrast, describes a method for gathering specific types of data, storing and processing it in a specific way, all for a specific purpose, just the like the patent eligible method in *Capstan* of improving a sprayer with specific data processed in a specific way.

Roku argues that the 446 Patent claims a result without explaining the how— but the concrete steps of the claims are the how. The controlling device captures user interaction data, stores that data on the controlling device, uploads the data to computer, and thus the data is available for debugging. This is not merely the "result" that data is available for debugging. (D.I. 32, 22:3-10.)  The claim elements provide detailed steps for arriving at that result, and the result is an improvement in remote control technology.  *See Capstan*, 228 F. Supp. 3d at 1244. The 446 Patent is directed to a patent-eligible technological improvement, and Roku's Motion fails.

### 5. The 446 Patent's Claims Contain Inventive Concepts.

On *Alice* step two, Roku once again oversimplifies 446 Patent claim 1, and argues that it boils down only to a "storing" limitation.  (D.I. 32 at 23:6-25).  This flies in the face of the claim language and UEI's factual allegations. The 446 Patent is not simply directed to any kind of data—it is directed to storing specific types of data (user interactions with an interface element of a remote control application and actions

occurring in the application as a result of the interaction) in a specific way (on the controlling device).  (D.I. 28-9 at 38:43-57). And this was unconventional at the time of the patent—monitoring data within the controlling device, and specifically tracking data resulting from user interactions was not typical. (D.I. 28 at 52:1-3).

Roku also fails to explain how the one claim it analyzes is representative of all UEI's asserted claims. Claim 2 adds the element of that the data stored in the controlling device is stored within an event journal. (D.I. 28-9 at 38:58-60). Roku does not explain how this specific way of storing data— involving, for example, entries with various categories of data for each interaction—was conventional (particularly in light of the fact that the event journal is within the controlling device). Claim 3 adds the element that the captured data include the time of the interactions with the remote control application.  (*Id*. at 38:58-60).  Roku has not explained how storing any data about and within the remote control application is conventional, much less the specific category of time stamp data.  Finally, claim 4 adds the element that the event journal be encrypted.  (*Id*. at 38:66-67).  Encryption is often reserved for protecting confidential information, and is certainly above and beyond the abstract concept of simply storing data.  (*Id*. at 33:49-55).  Once again, Roku fails to carry its burden to demonstrate their invalidity on its motion to dismiss.  *See Presqriber*, 2015 U.S. Dist. LEXIS 177436 at *16.   Since Roku failed to even discuss the actual elements of the 446 Patent, much less dispute UEI's factual allegations of inventiveness, Roku's motion to dismiss fails as to the 446 patent.

### D.    The FAC States a Claim for Willful Patent Infringement.

UEI has sufficiently pled a claim for willful patent infringement as to each of the asserted patents.  Whether a party engaged in willful patent infringement is a matter of the trial court's discretion based on the facts of the case.  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S.Ct. 1923, 1934-35 (2016). Such conduct has been described as "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."   *Id.* at 1928-30.   The Federal Circuit has

identified non-exhaustive factors that a court may consider when determining whether an accused infringer's behavior is egregious, including "whether the infringer deliberately copied the ideas or design of another" and the "[d]efendant's size and financial condition." *Read Corp. v. Portec Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992). Here, UEI alleged willful infringement at least by alleging that Roku copied UEI's technology despite being a large company that could have legally licensed it.

In the FAC, UEI alleged that Roku either knew or should have known of the asserted patents as of at least September 2017, based on one or more of communications between the parties, UEI's marking, and/or cross references in Roku's patents and patent applications. (D.I. 28 at ¶¶ 22, 37, 57, 83, 102, 125, 147, 170, 188, 205).  With respect to the 642, 389, 325, and 853 Patents, UEI alleged that: (i) the patents relate to features incorporated into versions of UEI's QuickSet product family (D.I. 28 at ¶¶ 20, 22); (ii) UEI provided Roku with access to technical information and software developer kits ("SDKs") that "allowed Roku to copy patented aspects of UEI's QuickSet® technology…." (*id.* at ¶ 22); and (iii) after receiving access to information about UEI's technology, Roku released products and/or software with features that infringe the asserted patents (*id.*).  With respect to the 309, 504, 505, 532, and 446 Patents, UEI alleged that Roku tested UEI's Nevo products and, after gaining possession and knowledge of the products, copied the patented features and released such features into the accused products.  (*Id.* at ¶¶ 126, 148, 171, 189, 206).  The FAC also alleges that Roku is a large public company with hundreds of millions in revenue, yet it opted not to pay when offered a license to UEI's technology (*id.* at ¶ 37, 57, 83, 102). Thus, UEI's FAC goes beyond merely alleging that Roku knew of the asserted patents and continued infringement; it alleges that Roku engaged in egregious behavior by copying patented technology disclosed to Roku during business discussions or via Roku's acquisition of products and that Roku included such technology in its own products without authorization.

In its Motion, Roku argues that allegations of knowledge and continued

23

infringement are insufficient to state a plausible claim for willful infringement. (D.I. 32 at 24-25). Roku's argument is irrelevant to this case, as UEI's allegations go beyond that threshold and support a finding of egregiousness under multiple *Read* factors, including that Roku copied UEI's designs and technology despite its size and finances. (D.I. 28 at ¶¶ 20, 22, 37, 57, 83, 102, 126, 148, 171, 189, 206). When accepting these allegations as true, UEI states a claim for willful infringement.

Roku's Motion also argues—without any authority—that to allege copying UEI needed to allege facts indicating actual copying *and* that UEI's SDKs embody the asserted patents. (D.I. 32 at 25). Roku is incorrect. Whether Roku engaged in copying is a question of fact. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1336 (Fed. Cir. 2016). UEI's factual allegations relating to copying include that Roku had access to UEI's technology or products and subsequently included their features in later released products and software. (D.I. 28, ¶¶ 20, 22, 126, 148, 171, 189, 206). UEI also alleges that each of the asserted patents relate to features incorporated into or are embodied by UEI's QuickSet and Nevo products, of which UEI alleges that Roku copied. (*Id.*, ¶¶ 20, 22, 126, 148, 171, 189, 206). UEI's allegations are similar to cases finding at least a factual question as to copying. *See, e.g.*, *WBIP*, 829 F.3d at 1336-37 (holding a jury could find copying where defendant's engineers were aware of and had access to plaintiff's products, expressed reference to those products, and adopted the same features into its own products). *Elbit Sys. Land v. Hughes Network Sys., LLC*, 2017 U.S. Dist. LEXIS 94495 (E.D. Tex. Jun. 20, 2017) (recommending denying motion for summary judgment of no copying where evidence showed that defendant was shown proposals for products and was familiar with product) (adopted by *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 2017 U.S. Dist. LEXIS 178887 (E.D. Tex. Jul. 31, 2017)). Thus, UEI's FAC states a claim for willful infringement based on Roku's copying UEI's technology without authorization.

## IV.  **Conclusion**

For at least the reasons stated above, the Court should deny Roku's Motion.

1

2      Dated: January 21, 2019

3

4                          By: */s/ Ryan W. Koppelman*

5                        Ryan W. Koppelman (SBN 290704)
                          Timothy R. Watson (SBN 293774)

6                        **ALSTON & BIRD LLP**
                        1950 University Avenue, 5th Floor

7                        East Palo Alto, CA 94303
                        Telephone:   (650) 838-2000

8                        Facsimile:   (650) 838-2001

9                        ryan.koppelman@alston.com
                        tim.watson@alston.com

10

11                     Michael J. Newton (SBN 156225)
                     **ALSTON & BIRD LLP**

12                     2828 North Harwood Street, 18th Floor
                     Dallas, Texas 75201

13                     Telephone:   (214) 922-3400
                     Facsimile:   (214) 922-3899

14                     mike.newton@alston.com

15                     Evan W. Woolley (SBN 286385)

16                     **ALSTON & BIRD LLP**
                     333 South Hope Street, 16th Floor

17                     Los Angeles, CA 90071
                     Telephone:   (213) 576-1000

18                     Facsimile:   (213) 576-1100
                     evan.woolley@alston.com

19

20                     *Attorneys for Plaintiff*
                     *Universal Electronics Inc.*

21

22

23

24

25

26

27

28

UEI'S OPPOSITION TO ROKU'S MOTION TO DISMISS

## CERTIFICATE OF SERVICE

I am employed in the County of San Mateo, State of California.  I am over the age of 18 and not a party to the within action; my business address is Alston & Bird LLP, 1950 University Avenue, Suite 500, East Palo Alto, California 94303.  On January 21, 2019, I served the foregoing document(s) described as:

**PLAINTIFF UNIVERSAL ELECTRONICS INC.'S DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS AND ACCOMPANYING DOCUMENT PRODUCTION**

by the indicated means to the persons at the addresses listed:

| | |
|---|---|
| **Jonathan D Baker**<br>jdbaker@dickinsonwright.com<br>Dickinson Wright PLLC<br>800 West California Avenue Suite 110<br>Sunnyvale, CA 94086<br>Telephone: 408-701-6200 | ☐ Via Overnight Courier<br>☐ Via Hand Delivery<br>☐ Via U.S. Mail<br>☐ Via E-mail<br>✓ Via Electronic Filing |
| **Michael D Saunders**<br>msaunders@dickinsonwright.com<br>**Steven Robert Daniels**<br>sdaniels@dickinsonwright.com<br>Dickinson Wright PLLC<br>303 Colorado Street Suite 2050<br>Austin, TX 78701<br>Telephone: 512-770-4200 | ☐ Via Overnight Courier<br>☐ Via Hand Delivery<br>☐ Via U.S. Mail<br>☐ Via E-mail<br>✓ Via Electronic Filing |
| **Steven A Caloiaro**<br>scaloiaro@dickinsonwright.com<br>Dickinson Wright PLLC<br>100 West Liberty Street Suite 940<br>Reno, NV 89501<br>Telephone: 775-343-7500 | ☐ Via Overnight Courier<br>☐ Via Hand Delivery<br>☐ Via U.S. Mail<br>☐ Via E-mail<br>✓ Via Electronic Filing |

I am readily familiar with our firm's processing of correspondence via electronic mail and U.S. Mail.  I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct; that I am employed in the office of a member of the bar of this Court at whose direction the service was made; and that this declaration was executed on January 21, 2019, at

UEI'S OPPOSITION TO ROKU'S MOTION TO DISMISS

1

2     East Palo Alto, California.

3

4                                                       _____
                                                              Jason A. Englund
5                                                             Alston & Bird LLP

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UEI'S OPPOSITION TO ROKU'S MOTION TO DISMISS