1  Jonathan D. Baker (SBN 196062)
2  jdbaker@dickinsonwright.com
   DICKINSON WRIGHT RLLP
3  800 W. California Avenue, Suite 110
   Sunnyvale, CA  94086
4  Telephone: (408) 701-6200
5  Facsimile:  (844) 670-6009

6  Steven R. Daniels (SBN 235398)
7  sdaniels@dickinsonwright.com
   Michael D. Saunders (SBN 259692)
8  msaunders@dickinsonwright.com
9  DICKINSON WRIGHT PLLC
   303 Colorado St., Ste. 2050
10 Austin, Texas  78701
11 Telephone:  (512) 770-4200
   Facsimile:  (844) 670-6009
12

13 *Attorneys for Defendant Roku, Inc.*
   Additional counsel on signature page
14

15         **UNITED STATES DISTRICT COURT**
           **CENTRAL DISTRICT OF CALIFORNIA**
16

17 UNIVERSAL ELECTRONICS INC.,        Case No. 8:18-cv-01580-JVS-ADS
   a Delaware Company,
18
                                      **REPLY IN SUPPORT OF ROKU,**
19         Plaintiff,                 **INC.'S MOTION TO LIMIT**
                                      **NUMBER OF ASSERTED CLAIMS**
20     v.

21 ROKU, INC.,                        Judge:   Hon. James V. Selna
   a Delaware Company,                Date:    March 11, 2019
22                                    Time:    1:30 p.m.
                                      Courtroom:  10C
23         Defendant.

24

25

26

27

28



# TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................1

II.     ROKU HAS PRODUCED TIMELY AND THOROUGH DISCOVERY
        REGARDING THE ACCUSED PRODUCTS ..............................................2

III.    UEI'S OPPOSITION FAILS TO JUSTIFY DELAYING THE
        REDUCTION IN THE NUMBER OF ASSERTED CLAIMS .....................3

        A.    UEI Does Not Need More Discovery Before the Court
              Requires a Reduction in the Number of Asserted Claims ...................3

        B.    The Court Should Limit UEI's Asserted Claims Before
              Claim Construction..............................................................................7

              1.    Courts Typically Require a Limitation on the
                    Number of Asserted Claims Before Claim
                    Construction ................................................................................7

              2.    The Court's Limit on the Number of Terms to be
                    Construed Does Not Resolve the Problem of UEI's
                    Assertion of 106 Asserted Claims .............................................10

              3.    Limiting the Number of Asserted Claims Before
                    Claim Construction Will Not Be Inefficient ............................12

        C.    Roku's Proposed Narrowing to 20 Claims Is Appropriate
              for this Case.........................................................................................13

              1.    UEI's Argument that Certain Groups of Claims
                    Present Unique Issues Fails to Show that a Limit
                    Greater than 20 Claims Would be Appropriate at
                    this Time ....................................................................................13

              2.    Roku Does Not Need to Make an Initial Showing
                    that the Claims are Duplicative in Order to Support
                    a Limit on the Number Asserted Claims, but Roku
                    has Nonetheless Provided Such a Showing ...............................15

        D.    UEI's Request to Simultaneously Limit the Number of
              Roku's Prior Art References to the Same Number as the
              Asserted Claims is Procedurally Improper, Infeasible, and
              Immensely Prejudicial .......................................................................18

IV.     CONCLUSION..........................................................................................20

# TABLE OF AUTHORITIES

**Cases**        **Page**

*Adobe Sys. v. Wowza Media Sys. LLC*,
   2013 WL 9541126 (N.D. Cal. May 6, 2013)....................................................8

*Arctic Cat, Inc. v. Polaris Indus. Inc.*,
   2015 WL 3756409 (D. Minn. June 12, 2015) ...........................................6, 7

*Avocent Redmond Corp. v. Rose Electronics*,
   2012 WL 4903270 (W.D. Wash. May 29, 2012) ..........................................17

*Broadcom Corp. v. Emulex Corp.*,
   2010 WL 11465322 (C.D. Cal. June 30, 2010) (Selna, J.) ..........................11

*Carl Zeiss AG v. Nikon Corp.*,
   2018 WL 1858183 (C.D. Cal. March 1, 2018)......................................17, 18

*Certusview Techs., LLC v. S&N Locating Servs., LLC*, 2014 WL
   4930803 (E.D. Va. Oct. 1, 2014)...............................................................9, 10

*DCG Sys. v. Checkpoint Techs.*,
   2012 U.S. Dist. LEXIS 117370 (N.D. Cal. Aug. 20, 2012) .........................19

*Fenster Family Patent Holdings Inc v. Siemen Med. Solutions USA*,
   *Inc.*, 2005 WL 2304190 (D. Del. Sept. 20, 2005) ..........................................8

*Fleming v. Cobra Elecs. Corp.*,
   2013 WL 1760273 (D. Idaho Apr. 24, 2013)................................................9

*Fontem Ventures, B.V. v. Njoy, Inc.*,
   No. 14-cv-1645, slip op. (C.D. Cal. July 20, 2015) ......................................9

*Fractus, SA v. Samsung Elecs. Co.*,
   2010 WL 11553618 (E.D. Tex. Mar. 8, 2010)..............................................9

*Fujifilm Corp. v. Motorola Mobility LLC*,
   2015 WL 757575 (N.D. Cal. Feb. 20, 2015).................................................9

*Gen-Probe Inc. v. Becton Dickinson & Co.*,
   2012 WL 579490 (S.D. Cal. Feb. 21, 2012)..................................................8

*Havco Wood Prods., LLC v. Indus. Hardwood Prods.*,
   2011 WL 5513214 (W.D. Wis. Nov. 10, 2011) .............................................8

# TABLE OF AUTHORITIES (cont.)

**Cases**                                                            **Page**

*High Point Sarl v. Sprint Nextel Corp.*,
2010 WL 1292710 (D. Kan. Mar. 29, 2010) ....................................6, 9, 11, 12

*Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*,
2014 WL 106926 (E.D. Mich. Jan. 10, 2014) ........................................8, 10

*In re Katz Interactive*,
639 F.3d 1303 (Fed. Cir. 2011) ..............................................*passim*

*KSR Int'l v. Teleflex*,
550 U.S. 398 (2007)............................................................19

*Lincoln Elec. Co. v. Soluciones*,
2016 WL 6909075 (N.D. Ohio Aug. 29, 2016).............................................17

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*,
918 F. Supp. 2d 277 (D. Del. 2013) ............................................16

*Memory Integrity, LLC v. Intel Corp.*,
2015 WL 6659674 (D. Or. Oct. 30, 2015) .....................................5, 7, 16, 17

*Oasis Research, LLC v. Adrive, LLC*,
2011 WL 7272473 (E.D.Tex. Sept. 13, 2011)...................................8

*Quest Integrity USA, LLC v. Clean Harbors Indus. Servs.*,
Civ. No. 14-1482-SLR, 2016 U.S. Dist. LEXIS 151588
(D. Del. Nov. 1, 2016) ....................................................9

*Realtime Data, LLC  v. Packeteer, Inc.*,
2009 WL 10667516 (E.D. Tex. Mar. 16, 2009)..........................................6, 9

*Regents of the Univ. of Minnesota v. AT&T Mobility LLC*,
2016 WL 7670604 (D. Minn. Dec. 13, 2016) ..........................................17

*Thought, Inc. v. Oracle Corp.*,
2013 WL 5587559 (N.D. Cal. Oct. 10, 2013). ......................................*passim*

*University of Virginia Patent Foundation v. General Elec. Co.*,
2015 WL 6958073 (W.D. Va. Nov. 10, 2015) ................................4, 8, 12, 18

# TABLE OF AUTHORITIES (cont.)

**Cases**                                                                                      **Page**

*West View Research, LLC v. BMW of N. America, LLC,*
     2017 WL 606511 (S.D. Cal. Feb. 15, 2017)............................................14, 15

**Rules**

Fed. R. Civ. P. 7(b) .................................................................................18

D. Utah Local Patent Rule 7.1 ..................................................................19

Northern District of California Local Patent Rule 3-4(a)..........................................2

## I.      INTRODUCTION

In its opening brief, Defendant Roku, Inc. ("Roku") explained why the Court should require Plaintiff Universal Electronics Inc. ("UEI") to reduce the number of asserted claims from 106 claims to 20 claims.  UEI clearly understands that nowhere close to all 106 currently asserted claims will go to trial; in fact, in the Opposition to Roku's Motion, UEI quotes the Court's admonition from the initial pre-trial conference, that the parties "are going to have to pare this case down for a jury trial." Dkt. No. 50 at 2.

As noted in the Motion, the majority of district courts favor limiting the number of asserted claims prior to claim construction.  By the time of the hearing on this Motion, UEI will have had weeks to analyze Roku's invalidity contentions, confidential documents, and source code to help identify the unique, representative claims it wishes to select.  And after selecting claims, UEI will be able to add unselected claims upon showing that they present unique issues of invalidity or infringement. In other words, limiting the number of asserted claims now is consistent with the weight of available authority and will not prejudice UEI.  On the other hand, and as explained in the Motion, allowing UEI to continue asserting 106 claims – the vast majority of which UEI will dispose of before trial – will unreasonably burden both Roku and the Court.

Nonetheless, UEI insists that limiting the number of asserted claims before claim construction would be "premature."  UEI's argument rests on:  (a) its assertion that it does not yet have the information needed to select the limited number of claims to assert; (b) the belief that courts "commonly" wait until after claim construction to limit the number of asserted claims; and (c) the contention that Roku has failed to adequately show that the currently asserted claims are duplicative.  As explained below, UEI's arguments lack merit and fail to justify denial of Roku's Motion.

## II.  ROKU HAS PRODUCED TIMELY AND THOROUGH DISCOVERY REGARDING THE ACCUSED PRODUCTS

Contrary to UEI's assertions, Roku has been timely, responsive, and fully forthcoming in providing discovery regarding the accused products.

UEI incorrectly asserts that it served its first set of requests for production and first set of interrogatories on Roku on November 19, 2018.  D.I. 50, at 2.  In fact, UEI served these discovery requests on Thanksgiving evening, November 21, 2018, right before the holiday weekend.  Baker Decl., Exs. B & C.  Despite the Thanksgiving and Christmas holidays, Roku timely served responses to UEI's discovery requests on December 21, 2018.  Baker Decl., ¶ 2.  Given the significant volume of documents requested, employee vacations over the Thanksgiving, Christmas, and New Year's holidays, and the lack of a protective order, it was not feasible or realistic for UEI to expect Roku to complete its responsive document production within 30 days of service of the document requests.  Roku worked diligently to identify, collect, and produce responsive documents in a timely manner.  Baker Decl., ¶ 3.

Roku has produced more than 100,000 pages of documents and has substantially completed the production of documents in response to UEI's requests for production.  Baker Decl., ¶ 4.  In particular, Roku produced non-confidential technical documents on January 24, 2018, and confidential technical documents on February 11, 2018, after UEI agreed to abide by an agreed protective order pending the Court's resolution of the scope of the prosecution bar.  Baker Decl., ¶ 4; Dkt. No. 39 (stipulating on January 31, 2019, that "the production of confidential documents and information will be governed by a proposed protective order provided by Roku to UEI via email on January 30, which will remain in effect until a protective order is entered by the Court.").

Roku produced the core technical documents related to the operation of the accused products even before the February 14, 2019, deadline required by Northern

District of California Local Patent Rule 3-4(a).  Baker Decl., ¶ 5.  Roku also notified UEI on February 12, 2019, that the source code for the accused products would be available for inspection by the end of that week.  Baker Decl., ¶ 6.  And UEI has already conducted one source code inspection on February 22, 2019, and is scheduled to conduct two additional source code inspections on February 28 and March 1, 2019.  Baker Decl., ¶ 6.

Roku also provided responses to UEI's interrogatories on December 21, 2019, and supplemented its responses to those interrogatories on February 21, 2019, to provide citations to the confidential documents produced by Roku once the parties had agreed on an interim protective order.  Baker Decl., ¶ 7.

Accordingly, Roku has provided timely discovery in response to UEI's discovery requests, and has produced extensive technical documentation regarding the structure, function, and operation of the accused products.

## III.  UEI'S OPPOSITION FAILS TO JUSTIFY DELAYING THE REDUCTION IN THE NUMBER OF ASSERTED CLAIMS

### A.  UEI Does Not Need More Discovery Before the Court Requires a Reduction in the Number of Asserted Claims

In its opposition, UEI argues that it needs additional discovery in order to determine the appropriate limit on the number of asserted claims.  Dkt. No. 50 at 5.  However, UEI's argument fails for multiple reasons.

First, courts routinely require parties to limit the number of asserted claims without requiring extensive discovery.  Indeed, "[i]n determining whether to require parties [to] limit the number of claims asserted, courts look to the number of patents and claims at issue and the feasibility of trying the claims to a jury. Courts should also look to whether the patents at issue have common genealogy, whether the patents contain terminal disclaimers, and whether the asserted claims are duplicative."  *See, e.g., Thought, Inc. v. Oracle Corp.*, 2013 WL 5587559, at *2 (N.D. Cal. Oct. 10, 2013).  None of these factors requires extensive discovery.

Notably, UEI cites no authority for its assertion that "a sufficient opportunity to obtain and consider discovery is of paramount importance in determining whether to limit asserted claims."  Dkt. No. 50 at 5.  To the contrary, courts typically set a limit on the number of asserted claims early in the case, before claim construction, and then allow patentees to add additional claims upon a showing of good cause.  *See, e.g.*, *Thought*, 2013 WL 5587559, at *2 ("Even after requiring parties to limit the number of claims at issue for claim construction or trial, courts should allow patent holders to bring back in nonselected claims upon a showing of 'good cause' that the non-selected claims present unique issues of infringement or invalidity.").

Second, even if discovery were needed in order to determine the appropriate limit on the number of asserted claims, UEI has already obtained sufficient discovery.  Many courts have found that the disclosure of infringement and invalidity contentions and core technical documents provides a sufficient basis for reducing claims.  *See, e.g.*, *University of Virginia Patent Foundation v. General Elec. Co.*, 2015 WL 6958073, *6 (W.D. Va. Nov. 10, 2015) ("[T]he Court finds that the parties' exchange of infringement and invalidity contentions and GE's provision of core technical documents provide the appropriate foundation for an initial claim reduction."); *Thought*, 2013 WL 5587559, at *3.  Here, Roku has already provided its invalidity contentions, its production of core confidential technical documents as required by N.D. Cal. P.R. 3-4(a), substantially completed its production of documents in response to UEI's requests for production, and produced source code for the accused products.  UEI has already conducted a source code inspection on February 22, and is scheduled to conduct a second and third source code inspection on February 28 and March 1.  Baker Decl., ¶ 6.  By the hearing on this motion, UEI will have had Roku's confidential technical information for four weeks, Roku's invalidity contentions for more than three weeks, and will have spent at least three days examining Roku's source code.  That provides more than adequate time for UEI to analyze this information and determine which claims to select.  Furthermore,

any delay in UEI's ability to review Roku's confidential discovery with an expert is a problem of its own making since UEI did not even disclose any experts under the agreed protective order until this past Friday, February 22, 2019.  Baker Decl., ¶ 8. If the Court nevertheless concludes that UEI legitimately needs additional time to make its selection of claims, the Court can grant UEI an additional week or two following the hearing to do so.  For example, the Court could require UEI to make its selection by March 18, which is several days before the parties are scheduled to exchange proposed claim constructions on March 21.  Alternatively, the Court could require UEI to make its selection by March 25, which is approximately three weeks before the April 15 deadline for the parties to submit their joint claim construction statement and identification of 10 terms to be construed at the claim construction hearing.

Third, UEI can seek leave to assert additional claims beyond the initial limit by showing that the additional claims raise unique issues.  As set forth in *In re Katz Interactive,* 639 F.3d 1303 (Fed. Cir. 2011), after the Court limits the number of asserted claims, UEI will have the opportunity to add additional unselected claims upon a showing that they present such unique issues. *See, e.g., Memory Integrity, LLC v. Intel Corp.*, 2015 WL 6659674, at *3 (D. Or. Oct. 30, 2015) (noting that if the patentee discovers that non-selected claims raise separate and distinct legal issues from those raised by the already-selected claims, it "may ask the Court for leave to reassert unselected claims").  Accordingly, the mechanism available for allowing UEI to add unselected claims fully protects its due process rights.

UEI argues that adding claims back in at the end of the case is inefficient and backwards because it will require the parties to re-do discovery on those claims. Dkt. No. 50 at 6.  However, Roku never proposed that claims could be added back in at the end of the case.  Rather, UEI must make a timely showing long before the end of the case if it believes good cause justifies adding in additional claims. Furthermore, Roku has ***already*** provided discovery on all of the accused products

with respect to all of the asserted claims.  Accordingly, UEI has the information needed to select its asserted claims.

UEI relies on *Realtime Data, LLC  v. Packeteer, Inc.,* 2009 WL 10667516 (E.D. Tex. Mar. 16, 2009) and *High Point Sarl v. Sprint Nextel Corp.*, 2010 WL 1292710 (D. Kan. Mar. 29, 2010) in support of its argument that additional discovery is needed before the court limits the number of asserted claims.  Dkt. No. 50 at 7.  However, both of these decisions pre-date the Federal Circuit's decision in *Katz.  See Realtime Data*, 2009 WL 10667516,*3 (noting that as of the date of the decision "the Federal Circuit has not directly addressed the issues surrounding when and how a district court may limit the asserted claims in a patent case.").  Moreover, in *Realtime Data*, the court relied on the fact that the claim construction hearing was only six weeks away and therefore the parties and the Court would not benefit by a reduction in the number of claims before the hearing.  *Realtime Data*, 2009 WL 10667516, *3 ("such a limitation so close to the Markman hearing will not help the parties, nor the Court, prepare for the upcoming hearing.").  Here, by contrast, the Markman hearing is not until July.  Furthermore, *High Point* provides no support for UEI's position because the court later reversed its earlier decision and limited the number of claims before the claim construction hearing.  *See High Point Sarl v. Sprint Nextel Corp.*, 2010 WL 9497168, at *3 (D. Kan. Aug. 18, 2010) (requiring plaintiff to limit 117 claims to 20 claims before claim construction).

UEI also relies on *Arctic Cat v. Polaris Indus. Inc.*, 2015 WL 3756409 (D. Minn. June 12, 2015) to support its argument that limiting claims is premature.  Dkt. No. 50 at 7.  However, in that case, the court denied a motion to limit claims because the defendant had not yet provided its invalidity and non-infringement defenses.  *See Arctic Cat*, 2015 WL 3756409, at *4.  Here, in contrast, Roku has already served its invalidity contentions and UEI will have had those for more than three weeks by the time of the hearing on this motion.  And UEI's lack of discovery regarding Roku's infringement defenses results solely from UEI's own failure to serve any

interrogatories seeking disclosure of Roku's infringement defenses.  Baker Decl., ¶ 9.  Moreover, in *Arctic Cat*, the court explicitly rejected the plaintiff's proposal to defer the reduction in asserted claims until after claim construction.  *See Arctic Cat*, 2015 WL 3756409, at *4 ("It is equally clear to this Court, however, that waiting to reduce claims until after claim construction would be too late in the litigation process. Indeed, the vast majority of courts that have ordered claim reduction have done so prior to claim construction.").

Accordingly, UEI has failed to show that the court should delay imposing a limit on the number of asserted claims.

B.     **The Court Should Limit UEI's Asserted Claims Before Claim Construction**

1.     **Courts Typically Require a Limitation on the Number of Asserted Claims Before Claim Construction**

As Roku explained in its opening brief, courts generally agree that the time for limiting the number of asserted claims is before claim construction.  Dkt. No. 41 at 7.  In its opposition brief, UEI maintains that the normal course of patent litigation defers the reduction in the number of asserted claims until after claim construction. However, UEI's assertion is contrary to the weight of authority.

Since the Federal Circuit decided *In re Katz*, the courts have tilted heavily towards limiting the number of asserted claims during the period after the disclosure of invalidity contentions and before claim construction – a fact that district courts continue to acknowledge. *See, e.g., Arctic Cat*, 2015 WL 3756409, at *4 (stating that "the vast majority of courts that have ordered claim reduction have done so prior to claim construction"); *Memory Integrity, LLC v. Intel Corp.*, 2015 WL 6659674, at *3 (D. Or. Oct. 30, 2015) (collecting cases where district courts limited the number of asserted claims prior to claim construction).

This trend is no accident. As noted in the opening brief, forcing defendants and courts to "conduct a claim construction hearing for a multitude of claims that

Plaintiff may later elect not to pursue during the claim selection process" is a "waste of time and resources." *Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*, 2014 WL 106926, at *4 (E.D. Mich. Jan. 10, 2014); *see also Oasis Research, LLC v. Adrive, LLC,* 2011 WL 7272473, at *2 (E.D.Tex. Sept. 13, 2011) (limiting the number of asserted claims is appropriate prior to completion of fact discovery "to aid in efficiency and narrowing the claims prior to claim construction"). Limiting the number of asserted claims during the time period after service of the defendant's invalidity contentions and before claim construction balances the plaintiff's need for information to assess which claims to assert and the court's and the defendant's interests in avoiding wasting resources on claims a jury never will hear. *Thought*, 2013 WL 5587559, at *3; *University of Virginia Patent Foundation*, 2015 WL 6958073, at *6 ("parties' exchange of infringement and invalidity contentions and [defendant]'s provision of core technical documents provide the appropriate foundation for an initial claim reduction").

Despite all of this authority, UEI contends that in the "normal course" of a patent infringement case, courts require a limitation on the number of asserted claim "only after claim construction and discovery." Dkt. No. 50 at 9. However, the authority on which UEI relies does not support its contention. UEI relies on *Fenster Family Patent Holdings Inc v. Siemen Med. Solutions USA, Inc.*, 2005 WL 2304190, at *3 (D. Del. Sept. 20, 2005) and *Adobe Sys. v. Wowza Media Sys. LLC*, 2013 WL 9541126, at *1 (N.D. Cal. May 6, 2013). But in both of those cases, the courts limited the number of asserted claims *before* claim construction. *See Fenster*, 2005 WL 2304190, at *3; *Adobe Sys.*, 2013 WL 9541126, at *1.

UEI also relies on a group of cases where the district courts limited the number of asserted claims after the completion of claim construction. *See Havco Wood Prods., LLC v. Indus. Hardwood Prods.*, 2011 WL 5513214 (W.D. Wis. Nov. 10, 2011), *Gen-Probe Inc. v. Becton Dickinson & Co.*, 2012 WL 579490 (S.D. Cal. Feb. 21, 2012), *Fujifilm Corp. v. Motorola Mobility LLC*, 2015 WL 757575 (N.D. Cal.

Feb. 20, 2015), and *Quest Integrity USA, LLC v. Clean Harbors Indus. Servs.*, Civ. No. 14-1482-SLR, 2016 U.S. Dist. LEXIS 151588 (D. Del. Nov. 1, 2016).  However, UEI fails to mention that the defendants in each of these cases filed their motions to limit the number of asserted claims after the completion of claim construction. Nothing in these cases suggests that the courts would have denied an earlier motion to limit the number of asserted claims before claim construction.

UEI also relies on *Fontem Ventures, B.V. v. Njoy, Inc.*, No. 14-cv-1645, slip op. (C.D. Cal. July 20, 2015) (Baker Decl., Ex. D), as support for delaying a reduction in the number of asserted claims until after claim construction.  However, in that case, the parties did not even raise the issue until after claim construction, and the court noted with disfavor the fact that the parties waited until so late in the case to raise this issue.  *See id*. at 2 ("While both the parties and the Court could have saved resources had this motion been brought at an earlier stage, reducing the number of claims now will still serve judicial economy in connection with motions for summary judgment and trial.").  Thus, this case hardly counts as compelling authority for deferring a reduction in asserted claims until after claim construction.

UEI's reliance on *High Point*, 2010 WL 1292710, *Realtime Data*, 2009 WL 10667516, and *Fractus, SA v. Samsung Elecs. Co.*, 2010 WL 11553618 (E.D. Tex. Mar. 8, 2010) is also misplaced as all three decisions pre-date *In Re Katz*.  Moreover, UEI fails to mention that in *High Point*, the same district court subsequently granted the defendant's renewed motion to limit the number of asserted claims ***before*** claim construction. *See High Point Sarl v. Sprint Nextel Corp.*, 2010 WL 9497168, at *3 (D. Kan. Aug. 18, 2010) (requiring plaintiff to limit 117 claims to 20 claims before claim construction).

Likewise, *Fleming v. Cobra Elecs. Corp.*, 2013 WL 1760273, *2-*3 (D. Idaho Apr. 24, 2013) and *Certusview Techs., LLC v. S&N Locating Servs., LLC*, 2014 WL 4930803, *5 (E.D. Va. Oct. 1, 2014), are distinguishable because there the district courts denied motions to limit the number of asserted claims before service of

defendant's invalidity contentions.[1]  In contrast, here, Roku has already provided its invalidity contentions.

In fact, UEI has not cited a single case decided post-*Katz* in which a district court denied a motion to limit the number of asserted claims after delivery of defendant's invalidity contentions, but prior to claim construction.

2. **The Court's Limit on the Number of Terms to be Construed Does Not Resolve the Problem of UEI's Assertion of 106 Asserted Claims**

UEI argues that the Court's decision to limit the number of claims terms to be construed to 10 means that limiting the number of asserted claims will not add any additional efficiency for the Court.  Dkt. No. 50 at 8.  In making this argument, however, UEI ignores the fact that if the Court does not limit the number of asserted claims before claim construction, there is a significant chance that the 10 terms that the Court construes will not be relevant to the claims that UEI ends up actually asserting at trial.  *See Joao Control and Monitoring Systems, LLC v. Ford Motor Co.*, 2014 WL 106926, at *4 (E.D. Mich. Jan. 10, 2014) ("The Court rejects Plaintiff's contention that the Court should wait to consider a limitation on the number of asserted claims until after the claim construction hearing.  It would be a waste of time and resources to conduct a claim construction hearing for a multitude of claims that Plaintiff may later elect not to pursue during the claim selection process.").  Not only would this result in the Court's original claim construction hearing being a waste of the Court's time, but it would almost guarantee the need for the Court to conduct a second claim construction hearing later in the case once it becomes clear which claims UEI actually intends to pursue.

UEI concedes that if the Court limits the number of asserted claims now, Roku would be in a better position to select the terms it wants construed.  Dkt. No. 50 at

---

[1] In *Certusview*, the first motion to limit claims was denied on March 19, 2014 more than one month before the invalidity contentions were served on April 29, 2014.  *See Certusview*, 2014 WL 4930803 at *1-*2.  Furthermore, the court denied the original motion due to discovery disputes that had delayed discovery.  *See id.* at *1.

8.  Nonetheless, UEI asserts that Roku has failed to make a detailed showing that a reduction in claims would meaningfully impact which key claim terms Roku might seek to have construed.  *Id.*  On the contrary, given the fact that UEI is currently asserting 106 claims from 9 patents, and Roku is only guaranteed to be able to select five terms for construction, it is self-evident that a reduction in the number of claims from 106 to 20 would significantly impact Roku's ability to select claim terms for construction that are likely to be relevant to the claims actually litigated at trial.

UEI also argues that the existing limit on the number of terms to be construed in this case distinguishes several of the cases cited by Roku because those cases did not have preexisting limits on terms to be construed and the early limiting of asserted claims was made for the purpose of limiting terms to be construed.  Dkt. No. 50 at 9.  In particular, UEI points to this Court's decision in *Broadcom Corp. v. Emulex Corp.*, 2010 WL 11465322 (C.D. Cal. June 30, 2010) (Selna, J.) as an example. However, in *Broadcom*, in ordering the plaintiff to the limit the number of asserted claims, this Court was not concerned just about reducing the number of terms that it would have to construe, but rather that the assertion of 178 claims would be unwieldy and unduly burdensome on both the parties and the Court throughout the remainder of the case.  *Id.* at *5 ("Broadcom is currently asserting 178 claims from eleven patents.   Proceeding with this number of claims through claim construction, summary judgment motions, and trial is an untenable proposition that would substantially drain the parties' and the Court's resources.").  Similarly, in *High Point Sarl v. Sprint Nextel Corp.*, 2010 WL 9497168 (D. Kan. Aug. 18, 2010), the court did not limit the number of asserted claims solely to streamline the claim construction process, but rather because the court found that the assertion of 125 claims was "unwieldy."   *Id.* at *3 ("The court agrees with defendants that this litigation is still unwieldy.").  This is confirmed by the fact that in addition to limiting the number of asserted claims, the court also limited the number of claim terms that the parties could propose for construction.  *Id.* (ordering parties to identify no more

than 20 terms for construction).  Not surprisingly, UEI has not cited a single case in which a court has held that limiting claim terms for construction is a sufficient proxy for limiting the number of asserted claims.

Indeed, in many cases, the courts have limited the number of asserted claims *in addition* to limiting the number of terms to be construed.  *See, e.g.*, *University of Virginia Patent Foundation*, 2015 WL 6958073, *7 (limiting the number of asserted claims even though court also limited the number of terms to be construed at the claim construction hearing to ten terms); *High Point*, 2010 WL 9497168, at *3 (same).

Furthermore, delaying the reduction of claims until after claim construction would continue to prejudice Roku and the Court because Roku will still be required to deal with all 106 asserted claims while claim construction proceeds, including the need to continue developing and gathering evidence to prove its non-infringement and invalidity defenses, developing evidence with respect to damages on all 106 asserted claims, and working with experts to prepare their expert reports on non-infringement, invalidity, and damages for all 106 asserted claims.

### 3. Limiting the Number of Asserted Claims Before Claim Construction Will Not Be Inefficient

UEI contends that limiting the number of asserted claims at this point in the litigation will be inefficient and wasteful because it will require UEI to later reintroduce claims to the litigation after receiving and analyzing the confidential documents and source code, and that this will require motion practice.  Dkt. No. 50 at 14.  However, as noted above, Roku has already produced its confidential documents regarding the operation of the accused products, including source code, with respect to all of the asserted claims, so UEI's speculation that Roku would refuse to produce such discovery is baseless.

Moreover, UEI's argument relies on mere conjecture that it will actually have good cause to seek to add additional unselected claims that raise unique issues of

1  infringement or validity beyond the 20 claims that it selects.  There has been no

2  showing that such good cause exists in this case, and therefore there may never be a

3  need for such motion practice to add additional claims to the case.  In contrast to

4  UEI's speculation regarding additional motion practice in the future, the parties and

5  the Court will obtain a real and immediate benefit by reducing the number of asserted

6  claims now.

7&8  **C.  Roku's Proposed Narrowing to 20 Claims Is Appropriate for this Case**

9  UEI argues that Roku's motion should be denied because Roku has allegedly

10  failed to show that the asserted claims are duplicative and because the claims

11  allegedly contain many unique issues of infringement.  Dkt. No. 50 at 15-19.  As

12  explained below, however, UEI's arguments are without merit.

14&15  **1.  UEI's Argument that Certain Groups of Claims Present Unique Issues Fails to Show that a Limit Greater than 20 Claims Would be Appropriate at this Time**

16  UEI argues that Roku's motion should be denied because the asserted patents

17  "contain many unique issues of infringement such that requiring UEI to narrow its

18  claims to 20 at this stage would violate its due process rights."  Dkt. No. 50 at 15.

19  As an initial matter, requiring UEI to reduce the number of asserted claims to 20

20  would not violate its due process rights because the proposed order allows UEI to

21  add additional non-selected claims upon a showing that such claims raise unique

22  issues of infringement or validity.  Dkt. No. 41-2.  Indeed, in *Katz*, the Federal

23  Circuit specifically confirmed that such a procedure does not violate the patent

24  owner's due process rights.  *See Katz*, 639 F.3d at 1311 ("We reject Katz's due

25  process argument. Katz has not shown that the claim selection procedure the district

26  court employed was inadequate to protect Katz's rights with respect to the unasserted

27  claims.").

28  Furthermore, although UEI attempts to explain why various groups of claims

raise unique issues, Dkt. No. 50 at 15-17, UEI fails to make an adequate showing that 20 claims is insufficient to adequately cover all unique issues.  Notably, UEI merely asserts that the 106 asserted claims raise "many" unique issues.  UEI does not provide any specific number of claims that it believes raise unique issues, let alone show that this number exceeds 20 claims.  For example, with respect to the 642 Patent, UEI alleges that one group of claims covers a method for transmitting a key code signal to a remote control, and another group of claims covers a method for transmitting a key code to an electronic consumer device, and another claim covers a remote control device rather than a method.  Dkt. No. 50 at 16.  Even accepting UEI's assertion that these constitute three unique issues of infringement, UEI fails to show that more than three claims are required to cover these three allegedly unique issues of infringement.  UEI's arguments regarding the other asserted patents suffer from similar deficiencies.  Moreover, UEI fails to adequately explain how these claim differences raise unique issues of infringement.  *See Thought*, 2013 WL 5587559, at \*3 ("Thought, however, does not explain in context how the differences in the scope of some the exemplar claims identified by Oracle raise unique questions of infringement or invalidity. As the Federal Circuit noted '[w]hile different claims are presumed to be of different scope, that does not mean that they necessarily present different questions of validity or infringement.'").

UEI's arguments in this regard mirrors that of the plaintiff in *West View Research, LLC v. BMW of N. America, LLC*, 2017 WL 606511 (S.D. Cal. Feb. 15, 2017).  There, the defendant moved to limit the 112 asserted claims from two patents to 7 claims per patent. The plaintiff admitted the number of claims asserted was excessive, and proposed that the district court order that the limitation imposed be 50 claims instead. The plaintiff argued that the claims were not duplicative – specifically, that the two patents were not duplicative of one another, and that "significant differences in claims *within the same patent* [we]re present."  *Id*. at \*1 (emphasis in original).  In denying the plaintiff's proposal, the district court noted

1   that the plaintiff failed to explain "how these factors counsel allowing assertion of

2   50 claims [of 112 claims asserted]." *Id*.  Like the plaintiff in *West View Research*,

3   UEI has described what it contends are several unique issues among certain claims,

4   but has not shown why 20 claims is inadequate to cover those unique issues.

5        UEI also argues that Roku offers no support for "limiting the asserted claims

6   to 20 at this early stage of the case." Dkt. No. 50 at 19. In its opening brief, Roku

7   cited a number of cases in which district courts found that limiting the number of

8   asserted claims to 15 claims was appropriate.  Dkt. No. 41 at 8-9.  Indeed, a limit of

9   15-20 asserted claims has found broad support across a variety of courts in cases

10  involving the assertion of an unwieldy number of claims across multiple patents,

11  especially when groups of patents come from the same patent family and include

12  extremely similar claims.  *See id*.  These limits are based on those courts' collective

13  experience with how many asserted claims are manageable and generally sufficient

14  to address all unique issues.  Moreover, any arbitrariness in the initial number is fully

15  resolved by allowing the patentee to add additional claims upon a showing of unique

16  issues.  Notably, UEI does not offer any other proposed limit.

17             2.      **Roku Does Not Need to Make an Initial Showing that the**
                       **Claims are Duplicative in Order to Support a Limit on the**
18                     **Number Asserted Claims, but Roku has Nonetheless**
                       **Provided Such a Showing**
19

20       UEI contends that "Roku's failure to present any substantive arguments

21  demonstrating actually [sic] duplication in the claims warrants denying" the Motion.

22  Dkt. No. 50 at 18.  However, UEI is incorrect for several reasons.

23       As an initial matter, Roku is not required to make a prima facie showing that

24  the claims are duplicative in order to justify a limitation on the number of asserted

25  claims.  *See Thought*, 2013 WL 5587559, at *3 ("[T]he Court does not agree that *In*

26  *re Katz* requires defendants to make a prima facie showing of duplication in order to

27  require a reduction in the number of asserted claims from a demonstrably

28  unmanageable amount, here 102, to a manageable one."); *see also Memory Integrity*,

2015 WL 6659674, at *3 (rejecting patent holder's argument that the district court should "refrain from limiting the number of asserted claims at this time because [the defendant] has failed to show that the asserted claims are duplicative"); *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 918 F. Supp. 2d 277, 284 (D. Del. 2013) (rejecting argument that "duplicativeness of the claims" is the only standard for limiting claims).

Moreover, to the extent that Roku is required to make an initial showing that the asserted claims are duplicative, Roku has made such a showing. As explained in Roku's opening brief, three of UEI's asserted patents (the '309 Patent, '504 Patent, and '505 Patent) (collectively, the "Janik patents") are all part of the same family, are directed to the same technological improvement, and share numerous virtually identical claims. *See* Dkt. No. 41, at 6-7. Moreover, UEI filed terminal disclaimers for these patents to overcome the Patent Office's rejection that the claims were not patentably distinct from each other. *See, e.g.*, Dkt. No. 28-6 at cover page ("This patent is subject to a terminal disclaimer"). Similarly, another three of UEI's asserted patents (the '642 Patent, '389 Patent, and '325 Patent) (collectively, the "Mui patents") are also part of the same patent family and share numerous virtually identical claims. *See* Dkt. No. 41, at 6-7. Additionally, UEI filed terminal disclaimers for the Mui patents to overcome the Patent Office's rejection that the claims were not patentably distinct from each other. *See, e.g.*, Dkt. No. 28-2 at cover page ("This patent is subject to a terminal disclaimer"). Furthermore, two more of UEI's asserted patents (the '532 Patent and '446 Patent) (collectively, the "Scott patents"), are part of the same patent family and thus share common genealogy. Additionally, Roku's opening brief identified specific duplicative claims, which is the same showing performed by the defendants in the *Katz* case. Dkt. No. 41 at 6. These facts are more than enough to show that the asserted claims are duplicative and to justify a reduction in the number of asserted claims. *See e.g., Thought, Inc.*, 2013 WL 5587559, at *3 (defendant's identification of "some of the 102 asserted

claims that it contends demonstrate duplication" and that "three of the patents have terminal disclaimers tied to other patents in this case," supported contention that there is duplication); *Memory Integrity*, 2015 WL 6659674, at *3 (showing that patents were interrelated sufficient to establish duplication for purposes of limiting number of asserted claims).

Furthermore, the cases that UEI relies upon are all distinguishable.  In *Avocent Redmond Corp. v. Rose Electronics*, 2012 WL 4903270 (W.D. Wash. May 29, 2012), the defendants did not even attempt to identify any duplicative claims.  *Id*. at *1.  And in *Lincoln Elec. Co. v. Soluciones*, 2016 WL 6909075 (N.D. Ohio Aug. 29, 2016), the Court found that it "would be premature" to limit the claims because the Plaintiff did "have sufficient information to make a confident determination as to which claims they will need."  *Id.* at *1.  In particular, at that time, the Defendant had produced no confidential or internal technical documents.  *Lincoln Elec. Co. v. Soluciones*, No. 1:15-CV-1575, Dkt. No. 64 at 1 (N.D. Ohio Jul. 11, 2016).  As noted above, Roku's technical document production is already substantially complete, and Roku has produced tens of thousands of pages of confidential, internal technical documents related to the accused devices, as well as permitting multiple source code inspections.

In *Regents of the Univ. of Minnesota v. AT&T Mobility LLC*, 2016 WL 7670604 (D. Minn. Dec. 13, 2016), the Plaintiff had already agreed to reduce the total number of claims twice (down to 45 claims before claim construction, and down to 20 claims shortly after the close of fact discovery).  *Id.* at *1.  Indeed, the court in that case expressly confirmed that "waiting to reduce claims until after claim construction would be too late in the litigation process."  *Id.* at *2.  By contrast, UEI has refused to commit to any particular reduction of claims at any particular time in the case, and expressly seeks to have claim construction proceed with over 100 asserted claims.

And in *Carl Zeiss AG v. Nikon Corp.*, 2018 WL 1858183 (C.D. Cal. March 1,

2018), the court denied the defendant's motion to limit the number of asserted claims because the defendants had not yet provided sufficient information to give the plaintiff the ability to determine how to limit the asserted claims—not because of any failure to adequately show that the asserted claims were duplicative. *Id*. at *1.

### D. UEI's Request to Simultaneously Limit the Number of Roku's Prior Art References to the Same Number as the Asserted Claims is Procedurally Improper, Infeasible, and Immensely Prejudicial

UEI argues that if the Court limits the number of asserted claims, the Court should also require Roku to simultaneously limit its prior art references to the same number. Dkt. No. 50 at 20. However, UEI's argument fails for a host of reasons.

First, as a procedural matter, UEI should not be allowed to hijack Roku's motion by seeking its own affirmative relief raised for the first time via an opposition brief. As provided by the Federal rules, UEI needs to file its own motion if it seeks affirmative relief. *See* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion"). This is particularly true here, where UEI never even raised any specific proposal regarding limiting the number of prior art references during the meet and confer on Roku's motion, and has never met and conferred with Roku regarding any such proposal. Baker Decl. ¶ 10. Other courts have rejected similar attempts to set a limit on the number of prior art references when ruling on a motion to limit the number of asserted claims. *See University of Virginia Patent Foundation*, 2015 WL 6958073, at *7 ("I do not find it appropriate at this point to impose a limitation [on the number of prior art references].").

Second, the appropriate number of prior art references depends upon how many claims UEI is allowed to assert and which particular claims UEI ends up selecting as its asserted claims. Dependent claims (those that take an independent claim and add additional limitations) require more prior art references than independent claims because they usually require a combination of two, three, or more references in order to demonstrate the obviousness of all the limitations in such

dependent claims.  As such, if UEI end up selecting mostly dependent claims, that would justify more prior art references than if UEI selects mostly independent claims.  Accordingly, any determination of a limit on the number of prior art references should be deferred until after the Court sets a limit on the number of asserted claims and after UEI makes its selection of claims.

Third, contrary to UEI's implication, there is no urgency to reducing the number of prior art references before claim construction.  As Roku explained in its opening brief, there is a direct correlation between the number of asserted claims and the number of claim terms likely requiring construction.  In other words, the more asserted claims, the more claim terms are likely to be in dispute and require resolution by the Court.  Additionally, the more claims that are allowed to be asserted at the time of claim construction, the more likely that the terms that are selected for construction exclude the terms in the claims that are ultimately asserted at trial.  In contrast, the number of prior art references does not directly impact the number of claim terms that are in dispute or create a risk that the court will need to conduct a second claim construction hearing.  *See DCG Sys. v. Checkpoint Techs.*, 2012 U.S. Dist. LEXIS 117370, at *5 (N.D. Cal. Aug. 20, 2012) ("reducing the number of prior art references . . . has little impact beyond the number of references considered in an expert report.").  Accordingly, any reduction in the number of prior art references can and should wait until after the Court issues its claim construction ruling.

Fourth, UEI's proposal that the number of prior art references should be limited to the number of asserted claims is facially infeasible and highly prejudicial.  Invalidity arguments based on obviousness for a single claim almost always require a combination of two, three, or more prior art references.  *See KSR Int'l v. Teleflex*, 550 U.S. 398, 420 (2007) ("Often, it will be necessary for a court to look to interrelated teachings of multiple patents" to determine whether a patent claim is invalid as obvious.).  Therefore, to the extent any limit is needed on prior art references, that number is typically set at several times the number

of asserted claims.  *See, e.g.*, D. Utah Local Patent Rule 7.1, available at https://www.utd.uscourts.gov/local-patent-rules (allowing three prior art references per asserted claim).

Fifth, none of the cases that UEI cites required the defendant to limit the number of prior art refences "simultaneously" with the plaintiff's reduction in the number of asserted claims.  Dkt. No. 50 at 20.  On the contrary, although these cases set limits for both the number of asserted claims and the number of prior art references, all of those cases provided for a period of time between the plaintiff's reduction in the number of asserted claims and the defendant's reduction in the number of prior art references.  This makes eminent sense since the particular prior art references that a defendant selects will necessarily depend on the particular claims the plaintiff selects.

Sixth, UEI asserts that there should be a limit on the number of obviousness combinations, but fails to propose any specific limit.  This lack of specificity only further demonstrates that UEI's request for a limit on prior art and invalidity defenses is incomplete and pre-mature.

Accordingly, the Court should reject UEI's request to impose a limit on the number of prior art references at this time.

## IV.   CONCLUSION

For the foregoing reasons, Roku respectfully requests that the Court grant the motion to limit the number of asserted claims.

Respectfully submitted,

Dated:  February 25, 2019

By:  /s/ *Jonathan D. Baker*
Jonathan D. Baker (SBN 196062)
jdbaker@dickinsonwright.com
**DICKINSON WRIGHT RLLP**
800 W. California Avenue, Ste. 110
Sunnyvale, CA  94086
Telephone:  (408) 701-6200
Facsimile:  (844) 670-6009

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Steven R. Daniels (SBN 235398)
sdaniels@dickinsonwright.com
Michael D. Saunders (SBN 259692)
msaunders@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
303 Colorado St., Ste. 2050
Austin, Texas  78701
Telephone:  (512) 770-4200
Facsimile:  (844) 670-6009

Steven A. Caloiaro (SBN 284410)
scaloiaro@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
100 West Liberty Street, Ste. 940
Reno, NV  89501
Telephone:  (775) 343-7500
Facsimile:  (844) 670-6009

*Attorneys for Defendant
Roku, Inc.*